IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE C. KNIGHT, | : | CIVIL ACTION NO. **3:CV-06-1942** |
| | : | |
| Petitioner | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DONALD L. KELCHNER, et al., | : | |
| | : | |
| Respondents | : | |

**Report and Recommendation**

## I. BACKGROUND.

On October 2, 2006, Petitioner, Andrew C. Knight, an inmate at the State Correctional Institution at Camp Hill, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2002 robbery conviction in the Dauphin County Court of Common Pleas.  Petitioner raises the following grounds: (1) Violation of the Interstate Agreement on Detainers (IAD); (2) Conviction obtained by unconstitutional use of perjured hearsay testimony to deny equal protection of speedy trial rule pursuant to Pa.Crim.R. 600; (3) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defense evidence favorable to the defendant for identification; (4) Conviction obtained by a violation of a trial by jury; and (5) Denial of effective assistance of counsel. (Doc. 1, pp. 6-10, 16).

During the preliminary screening of the above § 2254 habeas corpus petition, we determined that the petition may not have been filed timely under the AEDPA.[1]  We directed the

---

[1]The amended provisions of 28 U.S.C. § 2244(d)(1) impose limitations on the right to pursue federal habeas relief.  The amendments impose a one-year statute of limitations for § 2254 habeas petitions. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998).  There are four potential starting points for determining when the statute of limitations ("SOL") begins to run.  The applicable period in the instant

Petitioner to submit copies of his state court appeals, and the state court decisions regarding his appeals. (Doc. 6). The Petitioner was to include the dates that he filed his state court appeals and the dates of the state court decisions. (*Id*.). The Habeas Petition did not clearly reflect which claims he presented to the state courts in his appeals. Therefore, we determined that prior to serving the Petition on Respondents and addressing the merits of Petitioner's habeas claims, the Court must review the Petitioner's state court appeals, together with the state court decisions, opinions, and orders regarding both his direct and collateral appeals, along with the dates thereof. The Court would then determine if the Petitioner's instant claims have been exhausted in the state courts, in addition to determining if his habeas petition was timely under the AEDPA.[2]

Thus, in order to determine the timeliness of the Petitioner's present Habeas Corpus Petition, the Petitioner was directed to file with this Court, within ten (10) days of the date of our October 25, 2006 Order, copies of his appeals, direct and collateral, which he filed with the Pennsylvania State Courts, as well as the state court decisions. (Doc. 6). The Petitioner was also to indicate the dates he filed his appeals and the dates of the state court decisions. (*Id*.).

The Petitioner complied with the Court's October 25, 2006 Order and filed copies of his appeals, direct and collateral, which he filed with the Pennsylvania State Courts, as well as the state

---

matter is the date that Petitioner's judgment of conviction became final since it post-dated the effective date of the AEDPA. *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003). Any time devoted to pursuing a properly filed application for state post-conviction relief or other collateral relief is excluded from the limitations period. 28 U.S.C. § 2244(d)(2); *Merritt, supra. See Day v. McDonough*, 126 S.Ct. 1675, 1683 (2006).

[2]The habeas statute requires a prisoner to exhaust his claims in state court before seeking relief from federal courts. 28 U.S.C. § 2254(b)(1)(A); *see also Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir. 1990). It is well settled in the Third Circuit that the Court has discretion to raise procedural issues, such as exhaustion of state court remedies, in habeas cases, and it may do so *sua sponte*. *See Sweger v. Chesney*, 294 F.3d 506, 520-521 (3d Cir. 2002), *cert. denied*, 538 U.S. 1002 (2003).

court decisions, on November 2, 2006.  (Doc. 7).  Finding the Petitioner's Habeas Petition timely, the Court issued an Order on November 13, 2006, directing the Clerk to serve a copy of the Petition to the District Attorney ("DA") of Dauphin County.[3]  (Doc. 9).  After an extension of time, the Respondent DA filed a response to the Petition for Habeas Corpus on December 18, 2006. (Doc. 16).  The Respondent also filed Exhibits on December 19, 2006.  (Doc. 17).  On January 3, 2007, the Petitioner filed a Notice of Election, choosing to have the Court rule on his Petition as filed, and acknowledging that he may be forever barred from presenting in any federal court any claim that is not presented in this petition.  (Doc. 19).  The Petitioner also acknowledged that he may lose his ability to file a successive Petition absent certification by the Court of Appeals.  (*Id*.). After an extension of time, the Petitioner submitted a Traverse supporting his Habeas Petition on January 12, 2007.  (Doc. 21).

## II. STATE PROCEDURAL HISTORY.

On September 11, 2002, the Petitioner was found guilty, by a jury,  in the Court of Common Pleas of Dauphin County ("CCP"), Pennsylvania, of Robbery.  (Doc. 16, p. 2 & Doc. 17, Ex. A, p. 208).

On October 17, 2002, the Petitioner was given an aggregate sentence of ten (10) to twenty (20) years incarceration.  (Doc. 17, Ex. B, pp. 9-12).

The Petitioner filed a direct appeal of his judgment of sentence with the Superior Court of Pennsylvania.  (Doc. 8).  The Superior Court of Pennsylvania affirmed the Petitioner's conviction on February 4, 2004.  (Doc. 17, Ex. E, p. 8).  The Petitioner raised the following issues on appeal

---

[3]The Respondents concede that the Petitioner's Habeas Petition was timely filed.  (Doc. 16, p. 7, ¶ 23.).

to the Superior Court: (1) trial court erred in denying the Petitioner's Motion to Dismiss pursuant to the Interstate Agreements on Detainers; (2) trial court erred in denying the Petitioner's Motion to Dismiss pursuant to Pa. R. Crim. P. 600; and (3) trial court erred in denying the Petitioner's Motion to suppress identification.  (Doc. 1, p. 3).  On February 19, 2004, and again on March 2, 2004, the Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. (Doc. 8).  The Pennsylvania Supreme Court denied the Petitioner's Petition for Allowance of Appeal on June 3, 2004, and again on September 19, 2004.  (Doc. 8).

The Petitioner filed, *pro se*, a Petition for Post Conviction Relief Act ("PCRA") on October 12, 2004, with the CCP.  (Doc. 17, Ex. G).  Counsel was appointed to represent Petitioner in his PCRA petition.  (Doc. 17, Ex. H).  On November 12, 2004, counsel filed a Petition to Withdraw as Counsel based on the lack of merit to the PCRA petition.  (Doc. 17, Ex. I).  On November 24, 2004, Petitioner filed a *pro se* "Defendant's Opposition Answer in Response to Court-Appointed Counsel 'No Merit' Letter."  (Doc. 17, Ex. J).  On December 9, 2004, the Petitioner filed a *pro se* "Amended Petition under Post Conviction Hearing (sic) Act."  (Doc. 17, Ex. K).

On April 14, 2005, the PCRA Court directed appointed counsel to review the issues raised by the Petitioner in his Amended PCRA Petition, and to file an amended "no merit" letter or otherwise advise the court of continued representation.  (Doc. 17, Ex. L).  On May 18, 2005, appointed counsel filed a Supplemental Petition to Withdraw as Counsel.  (Doc. 17, Ex. M).  On June 9, 2005, the Petitioner filed a *pro se* "Supplemental Defendant's Opposition Answer in Response to Court-Appointed Counsel 'No-Merit' Letter."  (Doc. 17, Ex. N).  On October 13, 2005, the PCRA Court issued an Opinion and Order, granting appointed counsel's Petition to Withdraw

4

as Counsel and providing notice of the intent to dismiss the PCRA petition. On November 7, 2005, the Petitioner filed a *pro se* "Defendant's Exceptions to Notice of Intent to Dismiss the PCRA." (Doc. 17, Ex. P). The PCRA Court dismissed the Petitioner's PCRA petition on January 24, 2006. (Doc. 17, Ex. Q).

The Petitioner appealed to the Superior Court of Pennsylvania from the denial of his PCRA petition. (Doc. 17, Ex. R). On September 12, 2006, the Superior Court of Pennsylvania affirmed the dismissal of the Petitioner's PCRA petition. (Doc. 17, Ex. T). The Petitioner did not file a petition for allowance of appeal to the Supreme Court of Pennsylvania. (Doc. 16, p. 6).

On October 2, 2006, the Petitioner filed the present Petition for Writ of Habeas Corpus. (Doc. 1). The current Habeas Petition was timely filed on October 2, 2006.[4] (*Id.*).

## III.  STANDARD OF REVIEW.

The Antiterrorism and Effective Death Penalty Act, enacted on April 24, 1996, revised the standard of review for cases challenging state convictions pursuant to 28 U.S.C. § 2254. *Dickerson v. Vaughn*, 90 F.3d 87, 89 (3d Cir. 1996) *citing* Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, Title I, Sec. 104, 110 Stat. 1214 (1996) ("AEDPA"). Section 2254(d), as amended, states as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[4]*See supra* note 3.

> determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The "contrary to" provision contained in Section (d)(1) is evaluated as follows:

> [T]he inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition. Accordingly, we adopt O'Brien's holding that 'to obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.' In other words, it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome.

*Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) referencing *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998).

In *Breighner v. Chesney,* this Court stated the appropriate standard for the "unreasonable application" clause. 301 F. Supp. 2d 354, 357 (M.D. Pa. 2004), *aff'd.*, 156 Fed. Appx. 539 (3d Cir. 2005)(Non-Precedential). In *Breighner* the District Court held that under § 2254, a federal court no longer must "accord the 'presumption of correctness' to factual findings of a state court when the state court has previously considered and rejected the Petitioner's claims for relief." The *Breighner* Court held that the "presumption of correctness does not apply in such cases," *i.e.* when federal court reviews a habeas claim that the state court unseasonably applied federal law. *Breighner*, 301 F. Supp. 2d at 357. The *Breighner* Court further held that 28 U.S.C. § 2254"subsections (d)(2) and (e)(1) simply cannot apply to the same case; they are mutually exclusive." 301 F. Supp. 2d at 365. The Court interpreted subsection (e)(1) to be inapplicable to

proceedings under subsection (d)(2), and that subsection (e)(1) does not apply to claims under subsection (d)(2). *Id*. at 367-368.

The *Breighner* Court stated that:

> The federal habeas court's analysis under this subsection [(d)(2)] is limited to the record available to the state trial court--and reproduced in federal proceedings by the petitioner or "the State"--and encompasses two questions: (1) whether a factual determination of the state court was "unreasonable" in light of the state record, and (2) whether the state court's decision was "based" on that unreasonable determination. *See* 28 U.S.C. § 2254(d)(2), (f).

*Id*. at 368.

The *Breighner* Court also stated that "a factual determination should be adjudged 'unreasonable' under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record."(citations omitted). *Id*. at 368-369. The Court also stated that '[m]ere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination." (Citations omitted). *Id*.

In *Early v. Packer*, 537 U.S. 2 (2002), the Supreme Court indicated that as long as the state court adjudicates a claim substantively rather than procedurally, even if the federal law is not identified as the rule of the decision, it has adjudicated the claim on the merits for purposes of the AEDPA.

## IV. DISCUSSION.

### A. Exhaustion

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (April 24, 1996), which modified the procedures for habeas corpus proceedings in federal court. Section 104(1) of the Act mandates that applications by persons in state custody "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the Court of the State" or there is no available state remedy or that process would be ineffective.[5] A habeas corpus petitioner bears the burden of demonstrating that he or she has satisfied the exhaustion requirement. *Gonce v. Redman*, 780 F.2d 333, 335-36 (3d Cir. 1985). The exhaustion requirement "rests upon the principles of comity and judicial economy [and] provides state courts with an initial opportunity to consider and correct alleged violations of prisoners' rights without disruption from the federal courts." *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991); *see also Gibson,* 805 F.2d 135, 138 (3d Cir. 1986).

Exhaustion is not complete unless the trial court, the "intermediate court," and the highest state court, here the Superior and Supreme Courts of Pennsylvania, have been presented with the substance of the Petitioner's federal claim. *Evans v. Court of Common Pleas, Del. County, Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992). *See Duncan v. Henry*, 115 S.Ct. 887, 888 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

Exhaustion of state remedies is not required if: 1) the state corrective process is "so deficient"

---

[5]We note that a federal court may deny an application on the merits notwithstanding an applicant's failure to exhaust state remedies. *See* 28 U.S.C. §2254(b)(2).

that any effort to obtain relief via state proceedings would be futile, *Gibson*, 805 F.2d at 138;  2) the acts of the state authorities have, in effect, made state remedies unavailable to the Petitioner, *Mayberry v. Petsock*, 821 F.2d 179, 184 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987); and 3) there has been such an "inordinate delay" in state procedures that the state process has been rendered ineffective. *Hankins v. Fulcomer*, 941 F.2d 246, 251 (3d Cir. 1991); *Schandelmeier v. Cunningham*, 819 F.2d 52, 54-55 (3d Cir. 1986), *cert. denied*, 480 U.S. 938 (1987).

In the instant matter, we find that all five of the Petitioner's instant Habeas claims have been presented to the state's intermediate or highest appellate courts.  Thus, we find that the Petitioner has exhausted his present habeas claims.

### B.  Procedural Default

Even though all of the Petitioner's claims are exhausted, three of his claims are procedurally defaulted because Grounds Two and Three were previously litigated, and Ground Four was waived. A procedurally defaulted claim, while technically exhausted, may not be considered under § 2254 because the state procedural rule constitutes an independent and adequate ground to deny relief. *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *Colemand v. Thompson*, 501 U.S. 722, 750 (1991).  A claim is procedurally defaulted when state law clearly forecloses state court review of the claim. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

In Pennsylvania, a prisoner seeking to challenge a conviction must do so by direct appeal or by way of the PCRA.  *See generally* 42 Pa. C.S.A. § 9542.  Under the PCRA, a petitioner must plead and prove that a claim has not been previously litigated or waived.  42 Pa. C.S.A. § 9543(a)(3).  A claim is "previously litigated" if "the highest appellate court in which the petitioner

could have had review as a matter of right has ruled on the merits of the issue; or. . . has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. C.S.A. § 9544(a)(2)(3).  In *Tenuto v. Patrick*, the Court noted that:

> To be eligible for PCRA relief, an applicant must establish that the issues raised in his petition have not been previously litigated.  *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 698 (Pa. 1998).  *See* 42 Pa. Cons.Stat. Ann. § 9543(a) (West 1998)(to be eligible for PCRA relief, the petitioner must plead and prove by a preponderance of the evidence. . . (3) that the allegation of error has not been previously litigated or waived).  The PCRA statute also provides that an issue has been previously litigated if: (1) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or (2) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa. Cons.Stat. Ann. § 9543(a) (West 1995).

*Tenuto v. Patrick*, 2007 WL 1057008, at *8, n.1 (E.D.Pa. April 6, 2007).

An issue is "waived" if "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa. C.S.A. § 9544(b).

A federal court cannot review the Petitioner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Mccabe v. Pennsylvania*, 419 F.Supp.2d 692, 696 (E.D. Pa. 2006).

As mentioned, Grounds Two and Three are procedurally defaulted because they were previously litigated.  Ground Four is procedurally defaulted since it was waived and not preserved for appeal during trial.  The Petitioner does not satisfy the cause and prejudice requirement with respect to his procedurally defaulted claims because he does not show any "objective factor

external to the defense that prevented compliance with the state's procedural requirements."

*McCabe*, 419 F.Supp.2d at 697.

In any event, we will discuss each claim below, and will address the procedural defaults barring Petitioner's habeas claims in Grounds Two, Three and Four.  We will discuss the merits of Grounds One and Five.

### C.  Habeas Claims

#### 1.  Ground One

In Ground One, the Petitioner claims a violation of the Interstate Agreement on Detainers ("IAD"), 42 Pa.C.S.A. § 9101.  (Doc. 1, p. 6).  The Petitioner contends that the Commonwealth of Pennsylvania filed a detainer under the IAD with the State of Alabama to transfer him to PA to stand trial for charges pending against him.  (Doc. 21, p. 8).  The Petitioner argues that under Article IV of the IAD, 42 Pa.C.S.A. § 9101, Article IV(a)-(c), PA would have 120 days from the prisoner's arrival in PA to bring him to trial.  (*Id.* at p. 9).  The Petitioner states that absent good cause shown on behalf of the Commonwealth for violating this 120 day rule, the pending indictment, information or complaint on the basis of which the detainer was lodged, should be dismissed with prejudice.  (*Id.*).

As the Respondents point out in their brief, in the February 4, 2004 Opinion of the Superior Court of Pennsylvania, like the trial court, the Superior Court concluded that the Commonwealth proceeded under the Uniform Criminal Extradition Act ("UCEA"), 42 Pa.C.S.A. §§9121 *et seq.*, and not the IAD, in returning the Petitioner to Pennsylvania to stand trial.  (Doc. 16-2, p. 7).  In responding to the Petitioner's argument that the government lodged a detainer under the IAD that

triggered the 120-day requirement of Article IV of the IAD, the Superior Court of Pennsylvania

stated:

> Instantly, contrary to appellant's assertion, we agree with the trial court's conclusion that the Commonwealth never invoked Article IV of the IAD, but rather it proceeded under the Uniform Criminal Extradition Act (UCEA), 42 Pa.C.S.A. §§9121 *et seq*.  The language of Article IV of the IAD indicates, in order for the Commonwealth to trigger the 120 day period of Article IV, two requirements must be met: (1) an already lodged detainer; and (2) a subsequent written request for temporary custody or availability.  The record is devoid of any proof that the Commonwealth made a written request for temporary custody of appellant subsequent to its lodging a detainer against appellant.
>
> It is true the Commonwealth lodged a detainer against appellant; however, the record belies appellant's assertion the Commonwealth made a subsequent written request for temporary custody as described in Article IV of the IAD.  To the contrary, following the resolution of appellant's criminal charges in Alabama and the discover of his refusal to waive extradition, the Dauphin Count District Attorney's Office procured a Governor's Warrant and had it sent to the Governor's Office in Alabama requesting the extradition of appellant.  The mere fact that the Governor's Warrant herein was accompanied by a cover letter does not and should not alter the form or substance of the Commonwealth's course of action which was in conformance with the Uniform Criminal Extradition Act.

(Doc. 7-3, Ex. B, pp. 5-6)(Citations omitted).

We now apply §2254 (d)(2) pursuant to the *Breighner* Court's direction to Petitioner's claim.

We do not utilize the presumption of correctness of § 2254(e)(1) to Petitioner's claim contained in

Ground One, which arises under §2254(d)(2).  We find that Petitioner is not entitled to habeas

relief under subsection (d)(2) since the state courts' decisions with respect to the IAD claim in

Ground One were "reasonable both in [their] application of federal law and in [their] determination

of factual issues." *Breighner*, 301 F. Supp. 2d at 369.  We agree with the Respondents, and the

Superior Court of Pennsylvania, that the Petitioner did not show that the Commonwealth

proceeded under the IAD.  In fact, we find that the record is clear that the Commonwealth did not

12

proceed under the IAD.  Accordingly, we will recommend that the Petitioner be denied habeas relief with respect to Ground One.[6]

### 2. *Ground Two*

In Ground Two, the Petitioner claims that the Commonwealth used "perjured hearsay testimony" during a Rule 600 speedy trial hearing before the CCP on September 9, 2002.  (Doc. 1, p. 7 & Doc. 21, p. 13).  The Petitioner argues that "[t]his testimony has both factually and legally obstructed the truth of the circumstances and what is worse, has been known to the Commonwealth at all times as false, if not perjured testimony."  (Doc. 21, p. 13).  The Petitioner claims that because of this "untrue hearsay testimony, the Trial Court rejected the petitioner's computation of time spent in the state of Alabama toward the dismissal of petitioner charges, as guaranteed pursuant to Pa.R.CRIM.P. 600 prompt trial relief."  (*Id.*).

The Respondents argue that this claim is procedurally defaulted because it has been previously litigated, and that the Petitioner is mistaken about the facts underlying his claim.  (Doc. 16, pp. 8-9).  The Respondents note that the Petitioner raised this claim in his direct appeal to the Superior Court.  (Doc. 16, p. 2).  The Respondents also argue, that regardless of the procedural

---

[6]We also find that even if there were merit to this IAD claim, the Third Circuit has held that violations of the IAD are not fundamental enough to warrant federal habeas relief. *McCandless v. Vaughn*, 172 F.3d 255, 263-64 (3d Cir. 1999).  Under *Shack v. Attorney General of Pa.*, 776 F. 2d 1170 (3d Cir. 1985), the Petitioner's transfer from New York to Pennsylvania, allegedly without first being afforded a hearing in violation of Article IV of the IAD, did not require a new trial if the Defendant had been convicted after notice and a fair trial in Pennsylvania.   The *Shack* Court also held that the failure to afford the Defendant of a pre-transfer hearing did not justify federal habeas relief. *Shack*, 776 F. 2d at 1172, 1173-1174 (quotations omitted).  The *McCandless* Court also noted that in *Shack*, the Third Circuit held that violation of IAD Article IV's pre-transfer hearing provision was not sufficient to allow "the extraordinary sanction of a collateral attack on an otherwise valid criminal conviction".  172 F.3d at 263-264, n. 4.  Likewise, our Petitioner's transfer out of Alabama while his post-trial motions were still pending, allegedly in violation of IAD Article IV (Doc. 21, p. 8), is not a sufficiently fundamental defect to warrant habeas relief, especially since Petitioner was able to pursue his direct appeal of his judgment of conviction through the Pennsylvania court system to the highest state court.

default of this claim, there is no merit to the hearsay/perjury claim made by the Petitioner with respect to his Rule 600 hearing.  (Doc. 16, p. 8).  The Respondents explains:

> Specifically [Petitioner] claims that Detective Sergeant Carl Garver committed perjury when he testified that he was notified that [Petitioner] did not waive extradition.  In support of this claim [Petitioner] points to a form appended to appointed counsel's supplemental petition to withdraw.
> The form is a TransCor American, Inc., "Order Detail" dated June 18, 2001, indicating under "Type of Move" that the case involved a waiver.
> . . . [Petitioner] is simply wrong about the facts underlying this claim.  The TransCor document, dated June 18, 2001, reflects its own belief that [Petitioner] had waived extradition.  On that date, Alabama had notified Garver that [Petitioner] was available to be picked up.  Respondents' Exhibit A at 12-13.  However, on June 26, 2001, Alabama officials notified Garver that [Petitioner] did not waive extradition, id. at 13, so Garver began the process of obtaining the proper paperwork through the Governor's Office to obtain custody of [Petitioner].  Id. at 13-14.  The contradiction between TransCor's paperwork and Garver's testimony, then, simply reflects the state of affairs at two separate times and does not support any purported "perjury"; [Petitioner] simply misreads the transcript when he makes that allegation.

(Doc. 16, pp. 8-9).

We agree with the Respondents that not only is Petitioner's claim procedurally defaulted, but that it also fails on the merits, and will recommend that the Petitioner be denied habeas relief with respect to this claim.

In *Tenuto v. Patrick*, the Court stated that:

> A state court's determination that a litigant failed to satisfy the procedural requirements of the PCRA court and, therefore, is not entitled to have the claims reviewed on their merits, also bars a federal habeas court from entertaining the issue. *Sistrunk v. Vaughn*, 96 F.3d 666, 674 (3d Cir. 1996); *see also Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(if a state court previously refused to review a claim pursuant to a state law "that is independent of the federal question and adequate to support the judgment" a federal court will not consider the claim).  This state rule constitutes an adequate and independent state procedural ground such that claims previously litigated by petitioner on direct appeal and subsequently barred on PCRA review as previously litigated are procedurally defaulted.  *See Blackwell v. Larkins*, 1998 WL 401752, at *4-5 (E.D.Pa. July 6, 1998)

> (concluding that a claim previously litigated on state grounds and thus not reviewable during PCRA proceedings is procedurally defaulted).

*Tenuto v. Patrick*, 2007 WL 1057008, at *8 (E.D.Pa. April 6, 2007).

On September 12, 2006, the Superior Court addressed the claim contained in Ground Two of the Petitioner's Habeas Petition in an appeal from the decision of the CCP regarding Petitioner's second PCRA Petition.  The Superior Court stated:

> Appellant first argues that, during the Rule 600 hearing, the trial court improperly admitted into evidence and accepted as true certain police testimony which Appellant claims was both hearsay and perjury.  The officer testified that Transcor America, Inc., an entity which transports prisoners, had indicated that Appellant contested extradition.  According to Appellant, the court wrongly accepted the officer's testimony and, therefore, incorrectly attributed the time in Alabama to Appellant rather than the Commonwealth.  Consequently, maintains Appellant, the court made improper Rule 600 calculations and erred in denying his Rule 600 calculations and erred in denying his Rule 600 request.
> Appellant's argument is merely a new legal theory supporting his previous appellate contention that the trial court made incorrect Rule 600 calculations.  The Rule 600 claim has been litigated. A previously litigated claim is not cognizable under the PCRA.  42 Pa.C.S.A. §9544(a)(2).  Moreover, a PCRA petitioner cannot obtain relief by advancing a new legal theory supporting a previously litigated claim.  *Commonwealth v. Hutchins*, 760 A.2d 50, 55 (Pa. Super. 2000).  Therefore, Appellant is not entitled to relief on this argument.

(Doc. 17, Ex. T, pp. 3-4).

As the Superior Court found, and as Respondents argue, the Petitioner's Rule 600 speedy trial claim was previously litigated and, as a result, it is now procedurally defaulted.  (Doc. 16, p. 9).  The Petitioner does not demonstrate cause for the default or actual prejudice, and he does not show that failure to consider the speedy trial claim will result in a fundamental miscarriage of justice.  Even if Petitioner's Rule 600 speedy trial claim in Ground Two is considered on the merits, the record shows that the factual determination of the state court was reasonable and the state

court's decision not to reverse the Petitioner's conviction pursuant to Rule 600 was based on its reasonable determination as explained above by Respondents.  We will recommend that the Petitioner's request for habeas relief with respect to Ground Two be denied.

> 3. *Ground Three*

In Ground Three, the Petitioner asserts a claim under *Brady*, contending that the attorney for the Commonwealth failed to disclose exculpatory evidence.  (Doc. 1, p. 9 & Doc. 21, p. 17). Specifically, the Petitioner claims that, "in amid (sic) trial on cross-examination, defense counsel elicited information from the Commonwealth's sole star witness, that there were two (2) distinct or separate photo-array procedures. . .[t]he petitioner was not selected from or informed about [the] first array."  (Doc. 21, p. 17).

The Respondents contend that the Petitioner's claim in Ground Three is procedurally defaulted because it was previously litigated in his direct appeal and was not considered on the merits by the Superior Court upon review of the CCP's decision regarding the Petitioner's second PCRA Petition.  (Doc. 16, pp. 9-11).

The United States Supreme Court has held that the prosecution must give exculpatory evidence to the accused.  *Brady v. Maryland*, 373 U.S. 83, 86 (1963).[7]  There is no evidence that the prosecution failed to disclose exculpatory evidence, as the Petitioner claims.  The Superior Court addressed this claim at length in its September 12, 2006 decision regarding the Petitioner's appeal of the denial of his PCRA Petition with respect to the Prosecution's alleged failure to disclose

---

[7]Under *Brady*, the prosecution is required to disclose material exculpatory evidence to the defense in order to protect a Defendant's Fifth and Fourteenth Amendment due process rights. *Kyles v. Whitley*, 514 U.S. 419, 421-22 (1995).

the first photo array:

> Appellant's next issue concerns an alleged discovery violation by the Commonwealth.  The trial testimony showed that, before selecting Appellant form a photo array, the victim had seen other photos at the police station and she did not identify anyone in those photos as being the robber.  Appellant complains that the prosecution did not make pretrial disclosure concerning this first set of photos and, if the prosecution had done so, he may have been able to impeach the victim on the issue of identification.  He asserts that this alleged discovery violation deprived him of due process.
>
> There are several reasons why Appellant's claim must fail.  First, on his previous appeal, Appellant litigated the issue of identification and, in particular, the reliability of that identification.  Appellant is now giving another reason, or theory, as to why the identification made by the victim was not reliable.  The reliability of the identification is a question that has been litigated.  Appellant cannot re-litigate this question via a new legal theory.  *Hutchins*, 760 A.2d at 55.

(Doc. 17, Ex. T, pp. 6-7).

As the Superior Court stated the Petitioner's habeas claim raised in Ground Three was previously litigated, and under state law is procedurally defaulted. *See Tenuto*, 2007 WL 1057008, *8.

The Superior Court further addressed the merits of the Petitioner's *Brady* claim in its September 12, 2006 Memorandum:

> . . .[E]ven if we were to consider the alleged [*Brady*] violation as constituting a new issue, Appellant would still not be entitled to relief because he failed to plead a case sufficient to warrant PCRA relief or even to merit a PCRA hearing.
>
>  Appellant had a duty, in his PCRA pleadings, to state his claims and to demonstrate how he would prove those claims at an evidentiary hearing.  Although Appellant did allege that the Commonwealth failed to make pretrial disclosure of the first photo array, he proffered no evidence as to how he would substantiate this claim.  For example, he did not even suggest that he would call his prior counsel, the prosecutor or any other person who would testify that the Commonwealth did not disclose the existence of the first array to defense counsel before trial. . . Instead, his pleadings left the trial court, and this Court, with a bald allegation of a discovery violation without any demonstration as to how Appellant would prove that violation.
>
> While Appellant has failed to proffer any evidence supporting his claim that

17

his counsel was not advised, before trial, about the first array, we have nevertheless reviewed the record to see if it might support his contention. The record does not do so. For example, the trial transcript gives no indication that trial counsel was surprised by the testimony concerning the existence of the first array. After the victim testified that she had seen the first set of photos, counsel cross-examined her at length regarding identification and then specifically questioned the police officer about the first array. However, they do not support Appellant's claim that counsel was unaware of those photos.

There would have been no impeachment value to the first array unless Appellant was one of the people pictured therein. The most he did was to claim that his picture was somewhere in the police database at the time the victim saw the first group of photos.

Moreover, were we to assume that Appellant's pleadings somehow implied that his photo was indeed in the first array, he still did not proffer any evidence that would support this claim. He proposed no witnesses who would testify as to the composition of the first array.

. . . Apart from Appellant's pleadings, the record likewise shows no evidence that Appellant's photo was in the first array. For example, on cross-examination by defense trial counsel, the police officer indicated that, at the time the original photos were shown to the victim, Appellant was not yet a suspect. The officer then testified that he did not recall Appellant's photo being one of the pictures first seen by the victim.

In short, Appellant had a duty to demonstrate in his PCRA pleadings how he would prove that there had been a discovery violation and how he would prove that he was pictured among the first photos. He did neither. Having not pled a sufficient case to the PCRA court, he was not entitled to PCRA relief.

(Doc. 17, Ex. T, pp. 7-9)(Citations omitted).

The Petitioner attempts to rectify the shortcomings of his PCRA, as noted above by the Superior Court, by now naming witnesses he would use to prove his *Brady* claim in the present Habeas Petition. (Doc. 21, pp. 18-19). It is too late for the Petitioner to present new evidence that should have been presented in his PCRA Petition, as the Superior Court noted above. Moreover, the Supreme Court has held that federal habeas corpus cannot be used to correct errors of fact. *See Herrera v. Collins*, 506 U.S. 390 , 400, 113 S.Ct. 853 (1993)([F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of

fact."); *see also Monroe v. Smith*, 197 F.Supp. 2d 753 (E.D. Mich. 2001); *Hence v. Smith*, 37 F.Supp. 2d 970 (E.D. Mich. 1999).

Further, we find that the factual determination of the Superior Court with respect to the Petitioner's *Brady* claim, discussed above, was reasonable based on the record, and that the Superior Court's decision was based on its reasonable determination.

The Petitioner is procedurally barred from providing new evidence at this stage. Even if the Petitioner was not procedurally barred from pursuing his *Brady* claim, we agree with the Respondents that he still has failed to provide any evidence that his trial counsel was not familiar with the initial photo array or that the Petitioner's photo was included among the photos in this array. Further, the record shows that the Petiitoner was not even a suspect at the time the original photo array was shown to the victim.

We agree with the Respondents that the Petitioner has previously litigated this identification claim, and is therefore procedurally barred from raising it here based on a new legal theory. Petitioner is simply raising a new theory to challenge the reliability of the victim's identification, and the identification was litigated in the Petitioner's direct appeal on another theory. (Doc. 17, Ex. T, pp. 6-7). Also, we do not find that there was deviation from clearly established United States Supreme Court precedent, *i.e. Brady*, in the Superior Court's substantive adjudication of the Petitioner's claim. We find that Petitioner is not entitled to habeas relief under subsection (d)(2) since the state court's decision with respect to this claim was "reasonable both in [its] application of federal law and in [their] determination of factual issues." *Breighner*, 301 F.Supp. 2d at 369. The Petitioner has failed to establish that he was not in fact given exculpatory evidence since he was

not a suspect at the time the original photo array was shown to the victim.  Thus, we find no merit

to the Petitioner's *Brady* claim, and recommend that the Petitioner's request for habeas relief with

respect to Ground Three be denied.

### 4.  Ground Four

In Ground Four, the Petitioner challenges the trial judge's final instructions to the jury.  (Doc.

1, p. 10 & Doc. 21, p. 20).  The Petitioner states that "the trial judge told the jury in its instructions

that the Commonwealth had established that the petitioner was there [at the crime scene] and he

(Judge) was convinced of this by the testimony of Ms. Cotton, the other evidence, and other

factors." (Doc. 21, p. 20).  The Petitioner claims that this alleged statement from the judge made

in the course of giving the jury its final instructions, "effectively relieved the Commonwealth of its

burden of proving beyond a reasonable doubt each and every element of the substantive charge

in violation of *In re Winship*, 397 U.S. 358 (1970)." (*Id.*).  The Petitioner claims that this instruction

"diminished any force of the only defense offered and deprived the petitioner of his rights to a fair

and impartial trial by jury" and as a result, he should be granted a new trial.  (*Id.*).

The Respondents contend that the claim raised in Ground Four of the Petitioner's Habeas

Petition has been waived, and is therefore procedurally barred.[8]  (Doc. 16, pp. 12-13).   The

Respondents point out that the Superior Court has addressed the Petitioner's claim contained in

Ground Four, and found that it was waived, and was therefore procedurally defaulted.  (*Id.*).  In its

September 12, 2006 Memorandum, the Superior Court stated:

---

[8]Under Pennsylvania law, in order to preserve a claim for appellate review, the precise issue must be raised
with the trial court or it will be deemed waived.  *See Com. v. Halley*, 870 A.2d 795 (Pa. 2005).

20

> In his third issue, Appellant maintains that the trial court violated his right to a jury trial by interjecting its own opinion of the evidence and consequently by biasing the jurors.  We see that, at the close of the charge, defense trial counsel indicated to the court that the instructions were acceptable.  Likewise, counsel did not attack the jury instructions on appeal.  Objections to the jury charge must be made before deliberations. Having not been previously raised, Appellant's challenge to the instructions has been waived.

(Doc. 17, Ex. T, pp. 9-10)(Citations omitted).

We agree with the Respondents, and based on the Superior Court's September 12, 2006 Memorandum, we find that the Petitioner's jury instruction claim was waived since he did not timely object to it at trial, and, as a result, is procedurally defaulted for present purposes.[9]

In *Tenuto*, the Court stated:

> In the event a petitioner brings claims which are procedurally defaulted, he is not entitled to federal habeas review unless he can show that his default should be excused.  Such excuse is allowed only where the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice.

*Tenuto*, 2007 WL 1057008, at *7.(Citations omitted)(Internal quotations omitted).  We find that the Petitioner has not shown that his default should be excused because he has not shown cause for the default or actual prejudice as a result of any violation of federal law.  Additionally, the Petitioner has not demonstrated that failure to consider his claim would result in a fundamental miscarriage of justice.  We will recommend that the Petitioner's request for habeas relief with respect to Ground Four be denied.

---

[9]The merits of the Petitioner's jury instruction claim in Ground Four are further addressed below in our discussion of the Petitioner's ineffective assistance of trial counsel claims.  In this discussion, we find that the Petitioner's jury instruction claim, in addition to being procedurally defaulted, has no merit, and that the Petitioner's self-serving rendition of the trial court's final jury instruction was inaccurate and misleading.

5. *Ground Five*

In Ground Five, the Petitioner claims that he was denied the effective assistance of counsel. (Doc. 1, p. 16 & Doc. 21, p. 21).  The Petitioner claims that his trial counsel failed to (1) raise the issue of the inadmissable hearsay testimony, discussed in Ground Two above, on direct appeal, (2) "object and either request a mistrial or a continuance and otherwise raise and preserve for appellate review the issue that the prosecution withheld favorable evidence," and (3) "object and either request a mistrial or an adequate cautionary instruction and otherwise raise and preserve for appellate review the issue that the trial court in its final charge to the jury, invaded the province of the jury by expressing its belief or opinion to the reliability of the Commonwealth's case in violation of the Petitioner's right to a fair trial." (Doc. 21, pp. 21, 22, 24).

The Respondents contend that the Petitioner's claims of ineffective assistance of counsel must fail because they lack merit.  (Doc. 16, p. 13).  The Respondents claim that trial counsel litigated the Petitioner's IAD claim both pre-trial and on direct appeal, but was unsuccessful.  (*Id.*). The Respondents argue that the Petitioner fails to show any action or omission by his trial counsel that was unreasonable, or that would have resulted in a different outcome.  (*Id.*).  The Respondents state that "[t]rial counsel litigated these issues and they simply were decided against [the Petitioner] not because of any deficient performance on the part of counsel but because the law was contrary to [the Petitioner's] position." (*Id.* at pp. 14-15).  The Respondents also contend that the claims contained in Ground Five are procedurally defaulted because the Petitioner failed to develop his ineffective assistance of trial counsel claims, failed to properly raise these claims as required in his PCRA petition, and failed to present the claims to the state courts in a proper manner.  (Doc. 16,

p. 8, ¶ 28.).  We do not agree with the Respondents that the Petitioner has procedurally defaulted these claims in state court, and will address the merits of these claims below.  *See Wishnefsky v. Meyers*, 2005 WL 1498502, at *7 (M.D. Pa. June 22, 2005)

*Strickland v. Washington* lays out a two-part test to determine whether trial counsel was ineffective.  466 U.S. 668, 687 (1984).  First, the Petitioner must show that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lanfranco v. Murray*, 313 F.3d 112, 118 (2d Cir.2002).  In order to prove that trial counsel was deficient, the Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the sixth amendment." *Strickland*, 104 S.Ct. at 2064.  Furthermore, the court must be highly deferential in favor of trial counsel when evaluating counsel's performance.  *Id*.

The second prong of the *Strickland* test requires the "defendant to show that the deficient performance prejudiced the defense" so much so that the defendant was deprived of a fair trial. *Id*.  Furthermore, a person claiming ineffective counsel has the burden of proving that he or she was prejudiced by the deficient performance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-477 (2000).  Prejudice can be demonstrated by a showing that attorney error actually had an adverse effect on the defendant's case.[10]

The Petitioner requests habeas relief based on ineffective assistance of his trial counsel, and such claims, as stated, are reviewed under *Strickland*.  In *Everett v. Beard*, 290 F.3d 500, 508-509

---

[10]In *Reinert v. Larkins*, the Court stated that, "[i]n order successfully to claim ineffective assistance of counsel, [the Petitioner] must establish both that his attorney's performance was objectively unreasonable and that, but for the deficient performance, there would have been a reasonable probability of a different outcome."  379 F.3d 76, 94-95(3d Cir. 2004)(quoting *Strickland*, 466 U.S. 668 (1984).).

(3d Cir. 2002), the Third Circuit discussed this standard and stated as follows:

> Applying *Strickland*, this Court recently has held that in order to establish
> a claim of ineffective assistance counsel,
>> the petitioner must establish both that his counsel's
>> performance was deficient and that the deficient performance
>> prejudiced his trial to the extent that it undermined confidence
>> in the trial's outcome.  The standard by which we judge deficient
>> performance is an objective standard of reasonableness,
>> viewed to the extent possible from the attorney's
>> perspective at the time, without "the distorting effects of
>> hindsight."
>
> *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001) (citing and quoting
> *Strickland*, 466 U.S. at 687-90, 104 S.Ct. 2052).  To demonstrate prejudice,
> the habeas petitioner must show a "reasonable probability that, but
> for [his] counsel's unprofessional errors, the result of the proceeding
> would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.
>
> In addressing the reasonableness of an attorney's representation,
> reviewing courts must be deferential in their scrutiny and
> scrupulously avoid the distortions of hindsight by viewing
> performance from counsel's perspective at the time.  *Id.* at 689-90,
> 104 S.Ct. 2052.  Furthermore, claimants must identify specific
> errors by counsel, and the court must indulge a strong presumption
> that counsel's conduct was reasonable.  *Id.* at 690, 104 S.Ct. 2052.

As mentioned above, the Petitioner claims that he was denied effective assistance of counsel because his trial counsel failed to raise the issue of inadmissible hearsay testimony regarding his Rule 600 speedy trial claim (discussed in Ground Two above) on direct appeal.  (Doc. 21, p. 21). This ineffective assistance of counsel claim fails because the Petitioner has not established that his counsel's performance was deficient and that the deficient performance prejudiced his trial to the extent that it undermined confidence in the trial's outcome.  In his Reply Brief in support of his Habeas Petition, the Petitioner does not show how his trial counsel's performance in not raising the hearsay issue on direct appeal was deficient, and how this alleged deficiency undermined the trial's

outcome. (Doc. 21, pp. 21-22). Further, the Superior Court affirmed the PCRA Court's decision finding that trial counsel was not ineffective for failing to pursue the issue of the alleged hearsay testimony regarding the extradition issue and his Rule 600 claim. The Superior Court stated:

> . . .As we have already indicated, Appellant complains about testimony indicating that he contested extradition. In particular, Appellant asserts that the testimony was both hearsay and untrue. He claims his attorney was ineffective in failing to raise these arguments on appeal.
>
> Appellant is not entitled to relief. He has not developed an argument which addresses the relevant hearsay considerations or which presents the facts relating to the supposed falsehood of the testimony. Appellant has not shown that his claims have arguable merit.
>
> Alternatively, even assuming that there might be some merit to his undeveloped assertions, Appellant has proffered no evidence whatsoever to establish that his prior counsel lacked a reasonable basis for not raising these arguments on appeal. He has not suggested that he would call his counsel as a witness. He certainly has not told us, or the PCRA court, what counsel might say.
>
> It would be improper for this Court to assume, without evidence, that a lawyer lacked a reasonable basis in selecting appellate issues. To the contrary, Appellant must demonstrate, in his PCRA pleadings and in his appellate brief, that such was the case. Failing to do so, Appellant has not satisfied the second prong of the ineffectiveness paradigm.

(Doc. 17, Ex. T, pp. 5-6)(Citations omitted).

We find, as did the Superior Court, that the Petitioner failed to show ineffectiveness of counsel for failure to pursue the stated hearsay issue. Petitioner did not present any facts regarding the alleged false testimony and he did not show that this claim had any merit. The *Strickland* test for ineffective assistance of counsel is not met, and, therefore, the Petitioner's first ineffective assistance of trial claim is without merit.

The Petitioner next claims that he was denied effective assistance of counsel when his trial counsel failed to "object and either request a mistrial or a continuance and otherwise raise and preserve for appellate review the issue that the prosecution withheld favorable evidence." (Doc.

25

21, p. 22).  The Petitioner has not shown that his trial counsel's performance was unreasonable because the Petitioner has failed to establish both that his counsel's performance was deficient and that the deficient performance prejudiced his trial to the extent that it undermined confidence in the trial's outcome.  In his Reply Brief in support of his Habeas Petition, the Petitioner does not show how his trial counsel's performance in not objecting to the prosecution's testimony concerning the first photo array was deficient, and how this alleged deficiency undermined the trial's outcome.  (Doc. 21, pp. 21-22).  The Petitioner states that "[e]ven after trial counsel told the petitioner that he was unaware of the previous photo-array, counsel still sat and remain[ed] mute, nor inquired to discover whether or not obtain (sic) a continuance in order to interview Ms. Carrie Good."  (*Id.* at p. 22).  The Superior Court affirmed the PCRA Court's decision finding that trial counsel was not ineffective for failing to object to the testimony regarding the original photo array issue, or for failing to preserve the issue for appeal.  The Superior Court stated:

> Regarding the ineffective assistance of counsel aspect of this issue, we have already found that Appellant himself did not proffer any evidence showing that there was a discovery violation and/or that the first array had any impeachment value.  We therefore find that he did not demonstrate that the issue of the alleged discovery violation had arguable merit.  Thus, we will not deem prior counsel ineffective in failing to pursue that matter.

(Doc. 17, Ex. T, p. 9).

We find, as did the Superior Court, that the Petitioner has procedurally defaulted his *Brady* claim concerning the original photo array, and, as a result, find no merit to the same claim brought under the guise of a denial of effective counsel claim. Even if the Petitioner did not procedurally default this claim, the Petitioner has not met the *Strickland* test for ineffective assistance of counsel, and, therefore, his claim is without merit.  As discussed above, the record demonstrates that at the

time the victim was shown the initial photo array, Petitioner was not a suspect.  Thus, trial counsel's performance was not unreasonable since there was no basis to object to the reference of the first photo array and the first photo array had no impeachment purpose.

The Petitioner next claims that he was denied effective assistance of counsel when his trial counsel failed to "object and either request a mistrial or an adequate cautionary instruction and otherwise raise and preserve for appellate review the issue that the trial court in its final charge to the jury, invaded the province of the jury by expressing its belief or opinion to the reliability of the Commonwealth's case in violation of the Petitioner's right to a fair trial."  (Doc. 21, p. 24).  In his Reply Brief in support of his Habeas Petition, the Petitioner states that the judge told the jury, in his final instructions, "I am convinced by the testimony of Ms. Cotton and the other evidence and the other factors that they [Commonwealth] have established that he [Petitioner] was there."  (Doc. 21, p. 25).  The Petitioner argues that these jury instructions "invaded the truth-finding task assigned solely to the jury" and that "the judge told the jury that it viewed the petitioner as being the person [at the crime scene] and that the elements of the Robbery charge had been established beyond a reasonable doubt."  (Doc. 21, p. 25).  The Superior Court affirmed the PCRA Court's decision finding that trial counsel was not ineffective for failing to object to the final jury instructions, or for failing to preserve the issue for appeal.  The Superior Court stated:

> Further, Appellant's related ineffectiveness claim, which seeks to avoid waiver, fails because the underlying issue is without merit.  When we review a jury charge, we consider all the instructions as a whole and determine whether they clearly, adequately and accurately reflect the law.
> Appellant complains about the following portions of the charge:
>
> > . . . I am convinced by the testimony of Ms. Cotton and the other evidence and the other factors that they have established that he

[Appellant] was there.
\*\*\*\*\*\*

Also, you can consider what interests they have in the outcome of the case.  Does Ms. Cotton have any motive to falsely accuse someone or make a false identification?  Does she have some reason or some benefit inure to her to make a false accusation or false identification, or is she simply mistaken about that identification?  So those are things for you to consider.

Standing alone, the first paragraph of these instructions does read as if the trial court is expressing its own opinion that Appellant was present for the crime.  However, Appellant has quoted this portion of the charge out of context.  In truth, the first paragraph about which appellant claims included the following text:

> **Now you've got to decide.**  I am convinced by the testimony of Ms. Cotton and the other evidence and the other factors that they have established that he [Appellant] was there.  **Or you can look at his testimony, you can look at her testimony and combine those two and say, well, some of the things I agree on.  But you've got to make a judgment about ultimately the identification.**

Reading these instructions in context, it becomes clear that the court was not actually telling the jury that the court believed the witness.  Rather, the trial court was advising the jury that it had to decide whether to believe the witness or not.  The instructions presented the jury with options it could consider.

As for the second paragraph, we see nothing improper.  The court was advising the jury to consider the witness's credibility.

In sum, we have reviewed the jury instructions as a whole and find that the court properly stated the law without interjecting its personal opinions concerning the evidence.  Accordingly, counsel could not be found ineffective for failing to pursue this claim.

(Doc. 17, Ex. T, pp. 10-12)(Citations omitted)(Emphasis in original).

We find, as did the Superior Court, that the Petitioner's ineffective assistance of trial counsel claim concerning the failure to object to the trial judge's jury instructions is without merit.  The Petitioner has not met the *Strickland* test for ineffective assistance of counsel, and, therefore, his claim is without merit.  The record shows that in considering the challenged trial court's jury

instruction in its entirety, and not based on the Petitioner's selective editorial of the instruction, there was no basis for the Petitioner's trial counsel to object to the stated portion of the jury instruction.

We find that all of the Petitioner's ineffective assistance of counsel claims are without merit. Thus, we still recommend that the Petitioner's request for habeas relief on these claims contained in Ground Five be denied.

## V. RECOMMENDATION.

Based on the foregoing, we find that the Petitioner has procedurally defaulted his habeas claims in Grounds Two, Three and Four, and that the procedural default of these claims should not be excused.  We further find no merit to the Petitioner's exhausted claim contained in Ground One, as well as the Petitioner's ineffective assistance of trial counsel claims contained in Ground Five.  Therefore, we recommend that the Petitioner's Habeas Corpus Petition be **DENIED**.




**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 14, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDRE C. KNIGHT,                    :        CIVIL ACTION NO. **3:CV-06-1942**
                                    :
             Petitioner             :        (Judge Conaboy)
                                    :
        v.                          :        (Magistrate Judge Blewitt)
                                    :
DONALD L. KELCHNER, et al.,         :
                                    :
             Respondents            :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 14, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

30

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                          s/ Thomas M.  Blewitt
                              _____
                                          THOMAS M. BLEWITT
                                          United States Magistrate Judge

**Dated: August 14, 2007**