UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDRE C. KNIGHT,                    :
                                    :
          Petitioner,               :CIVIL ACTION NO. 3:06-CV-1942
                                    :
          v.                        :(JUDGE CONABOY)
                                    :(Magistrate Judge Blewitt)
DONALD L. KELCHNER, et al.,         :
                                    :
          Respondents.              :
                                    :

_____

**MEMORANDUM**

Here we consider Magistrate Judge Thomas M. Blewitt's Report
and Recommendation (Doc. 24) concerning Petitioner Andre C.
Knight's petition for writ of habeas corpus filed pursuant to 28
U.S.C. § 2254.  Petitioner filed this action on October 2, 2006,
challenging his 2002 robbery conviction in the Dauphin County Court
of Common Pleas.  (Doc. 1.)  After reviewing Petitioner's asserted
grounds for relief, the Magistrate Judge recommends dismissal of
Petitioner's action.  (Doc. 24 at 29.)  For the reasons discussed
below, we adopt the Magistrate Judge's Report and Recommendation as
modified and dismiss the instant Petition.

**I. Background**

The original incident underlying the current action is a
robbery at a Radio Shack store in Harrisburg, Pennsylvania, which
occurred on March 27, 2001.  (Docs. 17-4, 17-5, Dauphin County
Court of Common Pleas 1925 Opinion in Support of Order at 1.)  An
anonymous tip received by Dauphin County authorities provided

Petitioner's name as a suspect.  (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at 1.)   An employee of the store working at the time of the robbery, Diane Cotton, identified Petitioner in a prepared photo array.  (*Id.*)  The investigating officer, Detective James Heilig of the Susquehanna Police Department, obtained an arrest warrant and also received another anonymous tip that Petitioner intended to leave the area.  (*Id.* at 1-2.)

The criminal complaint in this matter was filed on March 30, 2001, charging Petitioner with robbery and firearms violations. (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at 5; Doc. 17-4, Appellant's Brief in Support of Matters to be Argued on Appeal Pursuant to 42 Pa. C.S. § 1925(b) at 2.)

Petitioner was arrested on April 4, 2001, in Alabaster, Alabama, and was detained based on a fugitive warrant relating to the Pennsylvania charges and unrelated Alabama charges.  (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at 6.)  On June 18 and 19, 2001, he was sentenced on the Alabama charges to serve sixty (60) days in the Shelby County Prison in Alabama.  (Doc. 17-4, Appellant's Brief in Support of Matters to be Argued on Appeal Pursuant to 42 Pa. C.S. § 1925(b) at 2.)

Also on June 18, 2001, Detective Sergeant Garver of Dauphin

2

County was notified by Alabama officials that Petitioner was available for his Dauphin County charges. (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at 6.) The same day the Commonwealth made arrangements to have a prisoner transportation company, TransCor, transport Petitioner from Alabama to Pennsylvania. (*Id.*)

Although Petitioner maintains the Commonwealth is incorrect on this point (Doc. 30 at 13), the Commonwealth asserted that on June 26, 2001, Alabama officials indicated Petitioner had not waived extradition. (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at 6.) Dauphin County officials then sought a Governor's warrant which it received on July 10, 2001. (*Id.*) The same day Commonwealth officials forwarded the necessary paperwork to the Alabama Extradition Coordinator, Office of the Governor, Montgomery, Alabama. (Doc. 17-4, Appellant's Brief in Support of Matters to be Argued on Appeal Pursuant to 42 Pa. C.S. § 1925(b) at 3.) On July 26, 2001, a deputy in the Shelby County Sheriff's office advised Detective Sergeant Garver of Dauphin County that the Governor's Warrant had been served on Petitioner, there were no local holds on him and he was available to be picked up. (*Id.*) On July 27, 2001, for the second time the Commonwealth made arrangements with TransCor to return Petitioner to Pennsylvania. (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at

3

6.)  Petitioner was picked up by TransCor on August 8, 2001, and placed in the Dauphin County Prison on August 15, 2001.  (*Id.*)

After his return to Pennsylvania, Petitioner requested a continuance of his preliminary hearing and two continuances of his trial - delays which totaled 77 days.  (Docs. 17-4, 17-5, Dauphin County Court of Common Pleas 1925 Opinion in Support of Order at 6.)

On September 11, 2002, in the Dauphin County Court of Common Pleas a jury found Petitioner guilty of robbery.[1]  On October 17, 2002, Petitioner was given an aggregate sentence of ten (10) to twenty (20) years.

Petitioner filed a direct appeal with the Superior Court of Pennsylvania.  Petitioner raised the following issues in his appeal: 1) the trial court erred in denying Petitioner's Motion to Dismiss pursuant to the Interstate Agreement on Detainers ("IAD") in that he should have been and was not tried within 120 days; 2) the trial court erred in denying Petitioner's Motion to Dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600 in that more than 365 days elapsed between the filing of the criminal complaint and his trial; and 3) the trial court erred in denying Petitioner's motion to suppress identification in that the identification from a photo array was tainted and unduly suggestive

---

[1]  This portion of the procedural background is derived from the Report and Recommendation (Doc. 24 at 3-5) unless otherwise noted.

4

"due to its being conducted in front of two people" and also because the description of the perpetrator was vague.  (Doc. 17-4 Ex. C Appellant's Statement of Matters Complained of on Appeal Pursuant to 42 Pa. C.S. § 1925(b).)  The Superior Court affirmed Petitioner's conviction on February 4, 2004.  On February 19, 2004, and again on March 2, 2004, Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court.  The Pennsylvania Supreme Court denied the petitions on June 3, 2004, and September 19, 2004.

On October 14, 2004, Petitioner filed, *pro se*, a Petition for Post Conviction Relief ("PCRA") with the Dauphin County Court of Common Pleas.  Counsel was appointed to represent Petitioner in his PCRA petition.  On November 12, 2004, counsel filed a Petition to Withdraw as Counsel based on the lack of merit to the PCRA petition.  On November 24, 2004, Petitioner filed, *pro se*, a document opposing counsel's "No Merit" letter.  On December 9, 2004, Petitioner filed a *pro se* "Amended Petition under Post Conviction Hearing Act."

Petitioner raised the following issues in his original and amended PCRA petitions: 1) the prosecution unconstitutionally withheld evidence regarding identification relating to an undisclosed first photo array (Doc. 17-6 Ex. G. Petition Under Post Conviction Relief Act); 2) he was deprived of a fair trial based on the trial judge's interjection of personal remarks in his jury

5

charge (*id.*); 3) he was denied state and federal due process rights relating to Sergeant Garver's testimony at the Rule 600 hearing (Doc. 17-6 Ex. K Amended Petition Under Post Conviction Hearing Act); and 4) denial of effective assistance of counsel on numerous issues, including those related to his IAD, Rule 600, photo array and jury charge claims (Doc. 17-6 Ex. G. Petition Under Post Conviction Relief Act; Doc. 17-6 Ex. K Amended Petition Under Post Conviction Hearing Act).

On April 14, 2005, the PCRA Court directed appointed counsel to review the issues raised by Petitioner in his amended PCRA Petition, and to file an amended "no merit" letter or otherwise advise the court of continued representation.  Appointed counsel filed a supplemental motion to withdraw on May 18, 2005, and Petitioner filed a *pro se* "Supplemental Defendant's Opposition Answer in Response to Court-Appointed Counsel's 'No Merit' Letter" on June 9, 2005.  The PCRA Court issued an Opinion and Order on October 13, 2005, granting counsel's Petition to Withdraw and giving notice of the intent to dismiss the PCRA Petition. Petitioner filed pro se "Defendant's Exceptions to Notice of Intent to Dismiss the PCRA" on November 7, 2005.  On January 24, 2006, the PCRA Court dismissed Petitioner's PCRA petition.

Petitioner appealed the PCRA Court's denial to the Superior Court of Pennsylvania.  On September 12, 2006, the Superior Court affirmed the dismissal of the PCRA petition.  Petitioner did not

file a petition for allowance of appeal to the Supreme Court of Pennsylvania.

Petitioner timely filed the current habeas petition pursuant to 28 U.S.C. § 2254 on October 2, 2006.  He sets out five grounds for relief: 1) violation of the Interstate Agreement on Detainers ("IAD"); 2) his conviction was obtained by unconstitutional use of perjured hearsay testimony to deny equal protection of the speedy trial rule pursuant to Pennsylvania Rule of Criminal Procedure 600; 3) his conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defense evidence favorable to the defendant for identification; 4) his conviction was obtained by a violation of trial by jury when the trial judge injected his opinion of the evidence during the jury charge; and 5) denial of effective assistance of counsel.  (Doc. 1.)

The Magistrate Judge issued his Report and Recommendation on August 14, 2007.  (Doc. 24.)  Magistrate Judge Blewitt concludes that Grounds Two, Three and Four have been procedurally defaulted in that Grounds Two and Three were previously litigated and Ground Four was waived.  (Doc. 24 at 9-11.)  He further concludes that Grounds Two and Three substantively lack merit.  (Doc. 24 at 15, 19.)  The Magistrate further concludes Grounds One and Five should be dismissed on the merits.  (*Id.* at 13, 29.)

On October 1, 2007, Petitioner filed objections to the Report and Recommendation.  (Doc. 30.)  Petitioner filed supplemental

objections in a document dated October 7, 2007. (Doc. 31.)  Because
Petitioner had filed a motion for extension of time to file
objections (Doc. 28) and the Court granted the motion, allowing
Petitioner until October 9, 2007, to file objections (Doc. 29), we
will consider these filings together.  Petitioner basically objects
to all of the Magistrate Judge's conclusions regarding both the
procedural and substantive aspects of his claims.  We will discuss
each in turn.

## II. Discussion

### A.    *Report and Recommendation Standard of Review*

When a Petitioner files objections to a magistrate judge's
Report and Recommendation, the district judge makes a *de novo*
review of those portions of the report or specified proposed
findings or recommendations to which objection is made.  *See
Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987),
*cert. denied*, 484 U.S. 976 (1987).  Therefore, we will review the
issues raised in Petitioner's objections *de novo*.  Concerning
matters to which Petitioner has not objected, we review the record
for "clear error" prior to accepting the magistrate judge's
recommendation.  *See Thomas v. Arn*, 474 U.S. 150-53 (1985); *Cruz v.
Chater*, 990 F. Supp. 375-78 (M.D. Pa. 1998); *Oldrati v. Apfel*, 33
F. Supp. 2d 397, 399 (E.D. Pa. 1998).

### B.    *28 U.S.C. § 2254 Habeas Standard*

As noted by our Third Circuit Court of Appeals, the Supreme

Court has often said habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (*quoting Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). The reasons for restraint exercised by federal courts in reviewing and granting habeas relief are many, including the considerations of comity and federalism. "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). Also, states have a recognized interest in the finality of convictions that have survived direct review within the state court system. *Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a).

A one year limitation period applies to a § 2254 petition. 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of one of four predicate occurrences, most commonly the date on which the judgment became final by the conclusion of direct review or the

9

expiration of the time for filing such review.  28 U.S.C. §
2244(d)(1)(A).

Here, the timeliness of Petitioner's action is not contested.
Petitioner's habeas petition raises the questions of whether his
claims are procedurally barred, whether the Pennsylvania courts
properly adjudicated the claims raised there, and whether there has
been a violation of constitutional rights or federal law in the
actions complained of which took place before, during and after
Petitioner's trial.

Absent special circumstances, the petition "shall not be
granted unless it appears that . . . the applicant has exhausted
the remedies available in the courts of the state."  28 U.S.C. §
2254(b).  If an applicant has the right to raise the questions
presented under any available state procedure, he shall not be
deemed to have exhausted the remedies available.  28 U.S.C. §
2254(c).

"A claim is exhausted if it has been "fairly presented" to the
state courts."  *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007)
(citations omitted).  *Nara* explained what it means for a claim to
be "fairly presented" in state court.

> A petitioner has fairly presented his claim
> if he presented the same factual and legal
> basis for the claim to the state courts.  *See*
> *Duncan v. Henry*, 513 U.S. 364, 366, 115 S.
> Ct. 887, 130 L. Ed. 2d 865 (1995) (*per
> curia*).  A petition can "fairly present" his
> claim through: (a) reliance on pertinent
> federal cases; (b) reliance on state cases

> employing constitutional analysis in like
> fact situations; (c) assertion of the claim
> in terms so particular as to call to mind a
> specific right protected by the Constitution;
> and (d) allegation of a pattern of facts that
> is well within the mainstream of
> constitutional litigation. *McCandless v.*
> *Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).
> Even if a state court refuses to consider the
> claim on procedural grounds, it is still
> exhausted as long as the state court had the
> opportunity to address it. *Bond v. Fulcomer*,
> 864 F.2d 306, 309 (3d Cir. 1989); *Pursell v.*
> *Horn*, 187 F. Supp. 2d 260, 288 (W.D. Pa.
> 2002) (Smith, J).

*Nara*, 488 F.3d at 197-98.  *Nara* also noted the United States

Supreme Court's holding in *Baldwin v. Reese*, 541 U.S. 27 (2004),

where the Court concluded that ordinarily a state prisoner has not

fairly presented a claim if the reviewing state court "'must look

beyond a petition or a brief (or similar document) that does not

alert it to the presence of a federal claim in order to find

material, such as a lower court opinion, that does so.'"  *Nara*, 488

F.3d at 198 n.17 (*quoting Baldwin*, 541 U.S. at 32).  The burden of

establishing that claims have been fairly presented falls upon the

petitioner.  *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.

1997).

    Claims which have not been fairly presented to a state court

may nonetheless be deemed exhausted in cases where the state courts

would not consider the unexhausted claims because of a state

procedural bar.  *Lines v. Larkins*, 208 F.3d 153, 159-60 (3d Cir.

2000); *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir. 1996).  "This

conclusion stems from the doctrine that exhaustion is not required where pursuit of state remedies would be futile." *Slutzker v. Johnson*, 393 F.3d 373, 380 (3d Cir. 2004). *Slutzker* further explained that "[w]here exhaustion is excused because of this form of futility, the habeas doctrine of procedural default may apply to bar relief." *Id.*

Under the procedural default doctrine, a district court does not reach the merits of a defaulted claim unless the petitioner can show "cause and prejudice" for the default or that a "fundamental miscarriage of justice" will result if the court does not consider the merits. *Slutzker*, 393 F.3d at 380-81. In order to show "cause and prejudice" sufficient to satisfy a state court default, a petitioner must show the "cause" for his default and "prejudice" attributable thereto. *See, e.g., Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000)(*citing McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 326 (1995). If a petitioner can meet the "cause and prejudice" or "fundamental miscarriage of justice" standard, his default will be excused. *Id.*

Similarly, where a petitioner's federal habeas claims have been fairly presented to a state court but the state court refused

12

to consider the claims because of a violation of state procedural rules, the procedural default doctrine applies in cases where the procedural default rested on "adequate and independent state law grounds." *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004) (citations omitted).  As stated by the United States Supreme Court in *Coleman*,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

Whether the procedural default doctrine applies (thereby requiring the petitioner to show cause and prejudice or a fundamental miscarriage of justice) depends on the threshold question of whether the final state court presented with a federal claim refused to decide the merits based on an established state procedural rule of law independent of the federal claim and adequate to support the refusal.  *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996).  The "independent" prong of the inquiry asks "if the state law ground is so 'interwoven with federal law' that it can not be said to be independent of the merits of a petitioner's federal claims."  *Johnson*, 392 F.3d at 557 (*citing Coleman*, 501 U.S. at 740)).  If the last state court to be

13

presented with a claim reached its merits despite a procedural bar, it removes the prohibition against federal habeas review. *Id.* (citation omitted). However, if the reviewing state court reached the merits as an alternative holding, the habeas court proceeds with the procedural default analysis. *Id.* at 558 (*citing Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)). Under the "adequate" prong, three considerations come to bear: 1) whether the state procedural rule speaks in unmistakable terms; 2) whether all state appellate courts refused to review the petitioner's claims on the merits; and 3) whether the state court's refusal is consistent with other decisions. *Johnson*, 392 F.3d at 558 (*citing Doctor*, 96 F.3d at 683-84). "Thus a state rule can be rendered inadequate if the rule is not 'strictly or regularly followed.'" *Id.* (*quoting Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted on April 24, 1996, revised the standard of review for cases filed pursuant to 28 U.S.C. § 2254 challenging state convictions where constitutional violations are alleged to have occurred. *Dickerson v. Vaughn*, 90 F.3d 87, 89 (3d Cir. 1996). If a claim presented in a 28 U.S.C. § 2254 habeas petition has been adjudicated on the merits in state court proceedings, "federal courts collaterally reviewing state proceedings [are required] to afford considerable deference to state courts' legal and factual determinations on the merits." *Taylor v. Horn*, ---F.3d---, No. 04-

9016, 2007 WL 2728668, at *9 (3d Cir. Sept. 20, 2007).

Specifically, the statute instructs that habeas relief cannot be

granted unless

> the adjudication of the claim -- (1) resulted
> in a decision that was contrary to, or
> involved an unreasonable application of,
> clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or (2) resulted in a decision that
> was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).  This is a limited review which does not

consider whether the trial court could have made a different

decision, or whether the reviewing court would have decided the

issue differently.  *See*, *e.g.*, *Matteo v. Superintendent, SCI*

*Albion*, 171 F.3d 877, 889-90 (3d Cir. 1999) (citations omitted).

    The starting point for the analysis under AEDPA is to "first

identify the applicable Supreme Court precedent and determine

whether it resolves the petitioner's claim."[2]  *Hackett v. Price*,

------

    [2]  The Third Circuit Court of Appeals also set out a "second
aspect" to the AEDPA analysis in *Fischetti v. Johnson*, 384 F.3d
140, 149 (3d Cir. 2004).

> In determining whether a state decision is an
> unreasonable application of Supreme Court
> precedent, this court has taken the view that
> "decisions of federal courts below the level
> of the United States Supreme Court may be
> helpful to us in ascertaining the
> reasonableness of a state courts' application
> of clearly established United States Supreme
> Court precedent."

*Fischetti*, 384 F.3d at 149 (*quoting Marshall v. Hendricks*, 307 F.3d
36, 71 n.4 (3d Cir. 2002)).  *Fischetti* also cautioned that,

15

381 F.3d 281, 287 (3d Cir. 2004) (*citing Werts*, 228 F. 3d at 196-97).

In *Taylor*, the Third Circuit Court of Appeals explained in detail the proper analysis of a state court decision under § 2254(d) and related provisions.  2007 WL 2728668, at *9.

> A state court decision is "contrary to" Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached" by the Court on a question of law, or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Court. *Williams v. Taylor*, 527 U.S. 362, 405, 120 S. Ct. 1495, 146. L. Ed. 2d 389 (2000).  An "unreasonable application" of Supreme Court precedent occurs: (1) "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

> If, on the other hand, "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA and explained in *Williams* do not apply. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  "In such an instance, the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of the AEDPA." *Id.*

---

although potentially helpful in determining reasonableness, "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare state decisions."  *Id.*

Whether or not the state courts reached the merits of a claim, § 2254(e)(1) requires that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *See id.* Although it would appear that there is "little material difference between a reasonableness determination and a presumption of correctness as they express the same fundamental principle of deference to state court findings," we have explained in fact

the language of § 2254(d)(2) and § 2254 (e)(1) implies an important distinction: § 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in the state-court proceedings,' while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record.

*Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004).

In addition, AEDPA prohibits district courts, except in certain limited circumstances, from holding an evidentiary hearing on a federal habeas claim "if the applicant has failed to develop the factual basis of [the] claim in State court proceedings," § 2254(e)(2). However, even if an evidentiary hearing is not prohibited under § 2254(e)(2), a petitioner is not necessarily entitled to one: "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, could entitle the applicant to federal habeas relief." [*Schriro v.*] *Landrigan* , 127 S. Ct. [1933], 1940 [2007]. Furthermore, to

17

the extent that "the deferential standards
prescribed by § 2254 control whether to grant
habeas relief, a federal court must take into
account those standards in deciding whether
an evidentiary hearing is appropriate." *Id.*
at 1940.

*Taylor*, 2007 WL 2728668, at **9-10.

We further note that under § 2254(d), a state court does not

need to cite federal cases or even exhibit an awareness of them,

"so long as neither the reasoning nor the result of the state court

decision contradicts" Supreme Court precedent. *Early v. Packer*,

537 U.S. 3, 8 (2002). "The question is whether the reasoning of

the [state] court is consistent with federal law." *Savage v. The

District Attorney of the County of Philadelphia*, 116 Fed. Appx.

332, 336 (3d Cir. 2004) (not precedential) (*citing Priester v.

Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004)).

Importantly, even if a federal reviewing court concludes a

constitutional error occurred at trial, habeas relief is not

warranted if the trial error was harmless. *Brecht*, 507 U.S. at

638. *Brecht* established that the test to be applied "is whether

the error 'had substantial and injurious effect or influence in

determining the jury's verdict.'" *Id.* (*quoting Kotteakos v. United

States*, 328 U.S. 750, 776 (1946)). A habeas petitioner is not

"entitled to habeas relief based on trial error unless they can

establish that it resulted in 'actual prejudice.'" *Id.* (*citing

United States v. Lane*, 474 U.S. 438, 449 (1986)).

As set out above, Petitioner identifies five grounds for

relief: 1) violation of the Interstate Agreement on Detainers ("IAD"); 2) his conviction was obtained by unconstitutional use of perjured hearsay testimony to deny equal protection of the speedy trial rule pursuant to Pennsylvania Rule of Criminal Procedure 600; 3) his conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defense evidence favorable to the defendant for identification; 4) his conviction was obtained by a violation of trial by jury when the trial judge injected his opinion of the evidence during the jury charge; and 5) denial of effective assistance of counsel. (Doc. 1.) Because Petitioner essentially objects to all of the Magistrate Judge's conclusions (Docs. 30, 31), we will address each ground for relief separately.

## C.   Petitioner's Claims

As noted above, because Petitioner objects to the Magistrate Judge's conclusion on all of his claims, we will review each asserted ground for relief.

### 1.   Interstate Agreement on Detainers

Petitioner first asserts the Magistrate Judge incorrectly determined his claimed violation of the Interstate Agreement on Detainers ("IAD") affords no basis for relief. (Doc. 30 at 4.) Rather than review in detail Petitioner's many arguments in opposition to the Magistrate Judge's determination and in support of habeas relief based on an IAD violation, we will first consider whether Petitioner could be afforded relief for his claimed

19

violated of the IAD – that he was not brought to trial within 120 days of being returned to Pennsylvania in violation of Article IV of the IAD, (Doc. 21-2 at 9).  For the reasons that follow, we conclude Petitioner's IAD claim does not provide a basis for habeas relief.  Because we agree with the Magistrate Judge that this claim does not provide a basis for habeas relief but decide the issue on a basis which differs from that discussed by the Magistrate Judge (Doc. 24 at 11-13), on this issue we adopt the Report and Recommendation as modified.

As explained by the Third Circuit Court of Appeals,

> the IAD is a compact which has been adopted by 48 states, the District of Columbia, and the United States, to encourage expeditious and orderly disposition of outstanding criminal charges filed against a person incarcerated in a different jurisdiction. (*Cooney v. Fulcomer*, 886 F.2d 41, 42 (3d Cir. 1989). IAD violations are cognizable in federal habeas corpus because the IAD is a "law of the United States" for the purposes of 28 U.S.C. § 2254.  *See Reed v. Farley*, 512 U.S. 339, 347, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994) ("While the IAD is indeed state law, it is a law of the United States as well."); *Cooney*, 886 F.2d at 43 n.1 ("the IAD [was] . . . approved by Congress pursuant to the Compact Clause [and] . . . is a federal law . . . .  Thus, the federal courts have habeas corpus jurisdiction . . .").

*McCandless*, 172 F.3d at 263.

Article IV of the IAD provides the procedure by which the prosecutor in the requesting state initiates the transfer:

> (a)  The appropriate officer of the jurisdiction in which an untried

20

> indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the authorities of the state in which the prisoner is incarcerated. . . .
>
> . . . .
>
> (c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

42 Pa. C.S.A. § 9101, Article IV(a), (c).

In a plurality opinion, the United States Supreme Court held that a state court's failure to observe the 120-day speedy trial provision of the IAD was not cognizable under 28 U.S.C. § 2254 when the defendant did not register an objection to the trial date at the time it was set, and did not suffer prejudice attributable to the delay. *Reed*, 512 U.S. at 352. The decision was based on the recognition that "a violation of federal statutory rights ranked among the 'nonconstitutional lapses we have held not cognizable in a postconviction proceeding' unless they meet the 'fundamental defect' test announced in . . . *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)." *Medellin v.*

21

*Dretke*, 544 U.S. 660, 664 (2005) (*citing Reed*, 512 U.S. at 349).
In *Hill*, the Court stated habeas review is available to check
violations of federal laws when the error qualifies as "a
fundamental defect which inherently results in a complete
miscarriage of justice [or] an omission inconsistent with the
rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428.

The Third Circuit Court of Appeals has reviewed similar IAD
claims to that raised by Petitioner and concluded that violation of
provisions setting out the time within which a trial is to be held
do not give rise to a "fundamental defect" warranting habeas
relief. *See Casper v. Ryan*, 822 F.2d 1283, 1290-91 (3d Cir. 1987).
Citing *Casper*, the Circuit Court addressed the viability of a
claimed violation of the IAD's 120-day rule: "if we were to assume
that the 120-day period was applicable, the extraordinary nature of
habeas relief requires [a petitioner] to make a showing of
prejudice." *Cooney v. Fulcomer*, 886 F.2d 41, 45 (3d Cir. 1989).
The prejudice required in *Cooney* is a showing that the claimed IAD
violation "'prejudiced [the petitioner's] ability to defend at
trial or the circumstances of his incarceration.'" *Id.* at 46
(*quoting Casper*, 822 F.2d at 1290). In considering a different
provision of the IAD, the Circuit Court reviewed various IAD
violations in the context of the availability of habeas relief,
identifying only the act's antishuffling provision as "fundamental
enough" to warrant habeas relief. *See McCandless v. Vaughn*, 172

22

F.3d 155, 263 & n.4 (3d Cir. 1999).

Following the Supreme Court's decision in *Reed*, our sister courts have routinely held that violation of the IAD's provisions regarding the time of trial do not warrant habeas relief, either because such a violation *per se* does not give rise to a fundamental defect or such a violation does not give rise to a fundamental defect absent a showing that the petitioner registered objection to the trial date at the time it was set and suffered prejudice attributable to the delayed commencement. *See*, *e.g.*, *Sterling v. Tennis*, No. Civ. A. 05CV00143-LDD, 2006 WL 1409719, at **8-9 (E.D. Pa. May 18, 2006); *Tyler v. Wilson*, No. Civ. A. 04-5946, 2006 WL 680959, at *3 (E.D. Pa. Mar. 14, 2006).

Given this relevant law, even assuming *arguendo* the IAD governs here, Petitioner's IAD claim does not warrant habeas relief. He has not proffered evidence that he made the required objection at the time the trial date was set, nor has he made the required showing of prejudice attributable to the delay.[3] Without having satisfied these prerequisites to consideration of his IAD claim, the asserted violation cannot provide a basis for habeas relief.

### 2.   *Rule 600 Hearing Testimony*

In Ground Two Petitioner claims habeas relief is warranted

---

[3]   The record indicates a pretrial hearing was held on a motion to dismiss the charges under the IAD and Pennsylvania Rule of Criminal Procedure 600. (*See*, *e.g.*, Doc. 16-2 at 8.)

because his conviction was obtained by the "unconstitutional use of perjured hearsay testimony [of Detective Sergeant Garver] to deny equal protection of speedy trial rule pursuant to Pa. Crim. R. 600." (Doc. 1 at 6.)   The accusations of perjury and hearsay arise from a dispute about whether Petitioner waived extradition from Alabama and Sergeant Garver's testimony at the Rule 600 hearing concerning waiver and the process of returning Petitioner to Pennsylvania. (*See, e.g.*, Doc. 16-2 at 9; Doc. 21-2 at 14-17.) Petitioner objects to the Magistrate Judge's conclusion that this claim is procedurally defaulted and substantively without merit. (Doc. 30 at 10-14.)   We agree with the Magistrate Judge's determination and conclude Petitioner's Second Ground does not provide a basis for habeas relief.

### A.   *Procedural Default of Rule 600 Hearing Claim*

Petitioner's claim regarding allegedly perjured testimony at his Rule 600 hearing cannot provide a basis for relief because Petitioner defaulted his claim in state court pursuant to an independent and adequate state procedural rule, and he has shown neither cause and prejudice for the default nor demonstrated that a fundamental miscarriage of justice will result if we do not consider the claim. *See Coleman*, 501 U.S. at 750.

Rule 600 of the Pennsylvania Rules of Criminal Procedure establishes the time frame within which a defendant is to be brought to trial. The pertinent provision in this case provides

24

"[t]rial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.  Pa. R. Crim. P. 600(A)(3).  Rule 600 further directs:

> For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. . . . If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied . . . .

Pa. R. Crim. P. 600(G).

As set out above, *see supra* Section II.B, even if a petitioner has fairly presented his claim in state court, if the reviewing court refuses to consider the merits of the claim based on an independent and adequate state procedural rule, the federal habeas court cannot review the claim unless the petitioner shows cause and prejudice for the violation of the state procedural rule or establishes that a fundamental miscarriage of justice will result if the federal habeas court does not review the claim.  *See*, *e.g.*, *Sistrunk*, 96 F.3d 666.

Here Petitioner did not fairly present his Rule 600 hearing claim on direct appeal in that he did not alert the reviewing state court that he was raising a federal claim.  In Appellant's

25

Statement of Matters Complained of on Appeal Pursuant to 42 Pa.
C.S. § 1925(b) (Doc. 17-4 Ex. C), Petitioner stated the following:
"The trial court erred in denying petitioner's Motion to Dismiss
Pursuant to Pa.R.Crim.P. 600, in that more than three hundred and
sixty-five (365) days had elapsed from the time of the filing of
the criminal complaint until petitioner's trial commenced." (Doc.
17-4 Ex. C. ¶ 2.)  In his supporting brief, Petitioner did not
mention or cite any law other than Pennsylvania Rule of Criminal
Procedure 600, and did not refer to any constitutional or federal
law principle.  (Doc. 17-4 Ex. D.)  The trial court's 1925 Opinion
discussed the issue in terms of state law (Doc. 17-4 Ex. E), and
the Superior Court decided the issue exclusively based on and with
reference to state law (Doc. 32, Appeal from the Judgment of
Sentence in the Court of Common Pleas of Dauphin County, Criminal
Division at No(s): 3694 CR 2001).  Therefore, in accordance with
relevant law, *see*, *e.g.*, *Nara*, 488 F.3d 197-98, Petitioner did not
fairly present his Rule 600 hearing claim on direct appeal.

In his Amended Petition Under Post Conviction Hearing Act,
Petitioner asserted a violation of due process rights in connection
with Sergeant Garver's testimony at the Rule 600 hearing.  (Doc.
17-6 Ex. K ¶ 9(a) and (c).)  The Superior Court of Pennsylvania
ruled that Petitioner was merely presenting a new legal theory in
support of his Rule 600 claim raised on direct appeal.  Because
this claim was previously litigated, the Superior Court concluded

it was not cognizable in his PCRA petition pursuant to 42 Pa. C.S.A. § 9544(a)(2).  (Doc. 17-9 Ex. T at 3.)  The Court also concluded Petitioner's PCRA Rule 600 claim violated the prohibition against advancing a new legal theory in support of a previously litigated claim.  (Doc. 17-9 Ex. T at 4.)  Thus, the last state court to review this claim declined to review the merits based on a state procedural rule.

Pennsylvania's rules prohibiting consideration of the merits of previously litigated claims have been considered a proper basis for procedural default.  *See*, *e.g.*, *Wenger v. Frank*, 266 F.3d 218, 227 (3d Cir. 2001).  Petitioner makes no argument that these rules are not an "adequate and independent" state law ground for denying review.  Therefore, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice in order to overcome the default.

In his objection to the Magistrate Judge's procedural determination, Petitioner argues the claim was exhausted on direct appeal and, therefore, can be reviewed by this Court.  (Doc. 30 at 12.)  However, as discussed above, Petitioner did not fairly present this issue on direct appeal because it was presented only as a state issue and he did not properly apprise the state court that he was asserting a federal claim.  *See*, *e.g.*, *Nara*, 488 F.3d 197-98.  Because the claim was not fairly presented on direct appeal, it was not exhausted at that level of review and cannot be

reviewed on the merits by this Court.

Petitioner also seems to make the further argument, though not easy to follow, that cause for any default can be attributed to the timing of the United States Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36 (2004).  (Doc. 30 at 11.)  *Crawford* held that, under the Confrontation Clause of the United States Constitution, testimonial statements of a witness who did not appear at trial are not admissible unless the witness was unavailable to testify and the defendant had a prior opportunity to examine him.  541 U.S. at 54-55.  Petitioner asserts that, because *Crawford* was decided between the Pennsylvania Superior Court's denial of his direct appeal and his application for allowance of appeal to the Pennsylvania Supreme Court, his trial/appellate counsel could not make a *Crawford* argument.  (Doc. 30 at 11.) Though not so stated, Petitioner's argument seems to be that Sergeant Garver's testimony at the Rule 600 hearing concerning what TransCor personnel had been advised by Alabama officials regarding Petitioner's failure to waive extradition should have been excluded pursuant to *Crawford*, and, if it had been, the trial court would have found that Rule 600's 365-day trial provision was violated. Thus, in essence Petitioner currently asserts a Confrontation Clause violation in support of his habeas petition.

Even if we were to assume *arguendo* that Petitioner has established cause for not raising his confrontation clause claim,

28

giving Petitioner every available inference, he has not shown the required prejudice.  A petitioner must show not merely the possibility of prejudice, but that the claimed constitutional errors "worked to his actual and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (internal quotation omitted); *see also Werts,* 228 F.3d at 193.

Petitioner's statement that "the record is devoid of any proof to substantiate the Commonwealth premises to deny equal protection for relief as guaranteed by Pa. R. Crim. P. 600" (Doc. 30 at 12) is a conclusory statement that does not satisfy his burden.  Moreover, because Petitioner's claim regarding Sergeant Garver's testimony relates only to the question of whether Petitioner waived extradition, even if Petitioner is correct that he waived extradition, the maximum amount of additional time attributable to the Commonwealth would be the delay caused by the misunderstanding. Based on the relevant timeline the only time that could have been attributed to the Commonwealth is the period from June 18, 2001, to July 26, 2001:  1) on June 18, 2001, Alabama officials first notified the Commonwealth of Petitioner's availability and Pennsylvania authorities made arrangements with TransCor to transport Petitioner from Alabama to Dauphin County; 2) on June 26, 2001, Alabama officials reportedly indicated to the Commonwealth that Petitioner had not waived extradition and the Commonwealth, therefore, needed to initiate a Governor's Warrant; 3) before June

26, 2001, Petitioner was not available due to his flight from

Pennsylvania and subsequent arrest on unrelated charges in Alabama;

4) having obtained the Governor's Warrant on July 10, 2001,

Commonwealth authorities forwarded it to Alabama the same day; 5)

on July 26, 2001, Alabama authorities notified Commonwealth

authorities the Governor's Warrant had been served on Petitioner,

there were no holds on him and he was ready to be picked up; and 6)

the Commonwealth made arrangements for transport on July 27, 2007.[4]

---

[4]   The trial court determined the Commonwealth acted with due
diligence in attempting to obtain Petitioner's return to
Pennsylvania.  (Doc. 17-5 Ex. E p. 6, 1925 Opinion in Support of
Order.)  The trial court found the Commonwealth's explanation of
the circumstances accurate, including the following summary in the
1925 Opinion:

> "Pursuant to fugitive warrant, the defendant
> was detained in Alabama on April 4, 2001.
> Additionally, the defendant was charged with
> local charges at that time.  On June 18,
> 2001, Detective Sergeant Garver was notified
> by officials in Alabama that the defendant
> was available for his Dauphin County charges.
> That same day, the Commonwealth made
> arrangements for TransCor, a prisoner
> transportation company, to pick up the
> defendant in Alabama and return him to
> Pennsylvania.  On June 26, 2001, officials in
> Alabama indicated that the defendant had not
> waived extradition and that Pennsylvania
> needed to initiate a Governor's Warrant.  The
> Commonwealth then sought and received a
> Governor's Warrant in an expedited manner.  A
> Governor's Warrant was signed on July 10,
> 2001.  That same day, it was forwarded to
> Alabama.  On July 27, 2001, the Commonwealth,
> for the second time, made arrangements with
> TransCor to transport the defendant to the
> Commonwealth of Pennsylvania.  The defendant
> was picked up by TransCor on August 8, 2001
> and was returned to the Commonwealth of

*See supra p. 3.* This timeline indicates that on July 27, 2001,
Petitioner was in exactly the same position he was in on June 18,
2001 - TransCor had been notified of his availability and he was
awaiting transport. The additional period of thirty-nine days
which may have been attributed to the Commonwealth if Sergeant
Garver's testimony on the subject of waiver was not allowed at the
Rule 600 hearing is not sufficient to establish prejudice,
particularly in light of Rule 600's allowance of additional time
where the trial court determines "the Commonwealth exercised due
diligence and that the circumstances occasioning the postponement
were beyond the control of the Commonwealth." Pa. R. Crim. P.
600(G).

Here, not only did the Pennsylvania trial court and Superior

---

Pennsylvania and placed in Dauphin County
prison on August 15, 2001."

(*Id.* (*quoting* Commonwealth's Brief in Opposition to Statement of
Matters Complained of on Appeal at 5).)

In its 1925 Opinion, the trial court concluded the period of
limitations did not begin to run on the date the complaint was
filed, March 30, 2001, but on August 15, 2001, when Petitioner was
returned to Pennsylvania. (*Id.*) Deducting the seventy-seven days
attributable to two continuances requested by Petitioner, the court
concluded he was brought to trial in 313 days so there was not
violation of Rule 600. (*Id.*)

The Pennsylvania Superior Court concluded the trial court
properly denied the motion to dismiss pursuant to Rule 600, noting
the time from March 30, 2001, to August 15, 2001, was properly
charged to Petitioner because "[b]y the time the criminal complaint
was filed, appellant had rendered himself unavailable for
prosecution by fleeing to Alabama." (Doc. 32, Appeal from the
Judgment of Sentence in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): 3694 CR 2001, p. 7.)

Court determine the Commonwealth acted with due diligence, the
courts also concluded that, given the time in Alabama attributable
to Petitioner and further delay caused by him upon his return to
Pennsylvania, Petitioner was brought to trial within the 365-day
period. *See supra* n.4.   The Pennsylvania courts found Petitioner
was brought to trial in 313 days.   *Id.*

Keeping in mind that Sergeant Garver's testimony to which
Petitioner objects has to do with whether he waived extradition
(*see* Doc. 21-2 at 14), Petitioner has presented no evidence that
the finding of due diligence would be negated if, as Petitioner
claims, the Commonwealth wrongly believed Petitioner did not waive
extradition.   Importantly, as noted by the Superior Court, it was
Petitioner's flight from Pennsylvania which occasioned any delay
associated with returning Petitioner to Pennsylvania.   (Doc. 30 at
7.)   Petitioner does not contest the essential facts of his flight
or subsequent charges in Alabama.   Even if the delay in returning
Plaintiff to Pennsylvania connected with the Commonwealth's
obtaining a Governor's Warrant (based on the belief that he had not
waived extradition) were deducted from the time attributable to
Petitioner - a time period of thirty-nine days at most - Rule 600's
365-day rule would not have been violated.   This is so because
adding thirty-nine days to the trial court's determination that
Petitioner was brought to trial in 313 days (Doc. 17-5 Ex. E at 6)
does not add up to a delay in excess of 365 days.   Given these

calculations, Petitioner cannot show the prejudice required to overcome procedural default of the issue, and habeas relief on Ground Two is not available on this basis.

### B. Merits of Rule 600 Hearing Claim

Although procedurally defaulted, we will briefly discuss the merits of Petitioner's claim as both Respondents and the Magistrate Judge have done so.  (Doc. 16-2 at 9; Doc. 24 at 14.)  As discussed above, Petitioner's precise claim is difficult to discern. However, it is clear that his underlying issue is the denial of relief (dismissal of the charges against him) pursuant to Pennsylvania Rule of Criminal Procedure 600.  (Doc. 30 at 10-14.) To the extent, as Petitioner argues, the claim may be a constitutional claim regarding equal protection and due process (*see* Doc. 30 at 13), the only constitutional argument even vaguely developed in his numerous filings is based on *Crawford v. Washington* - a confrontation clause claim which does not entitle Petitioner to relief.

First, we reiterate that no Pennsylvania Court addressed the merits of this claim in the context of, or in a manner we could deem consistent with, federal law.  Therefore, the requirements of 28 U.S.C. § 2254(d)(1) are not relevant to any discussion of the merits of this claim viewed in a federal law context.

The fact that Petitioner raised his Rule 600 claim *only* in the context of state law is also significant in that the violation of

state law does not entitle a petitioner to federal habeas relief. It is well recognized that a right created by state law is not cognizable as a basis for federal habeas relief pursuant to § 2254. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).  Further, it is also "well established that a state court's misapplication of its own law does not generally raise a constitutional claim." *Conduces v. Bayer*, 19 F.3d 110, 117 n.12 (3d Cir. 1994) (*quoting Geschwendt v. Ryan*, 967 F.2d 877, 888-89 (3d Cir.) (en Banc), *cert. denied*, 506 U.S. 977 (1992)). Therefore, even if Petitioner's claimed violations of state procedural rules and state law recommended remedies are valid, they do not form bases for the instant petition unless the supporting facts are sufficient to make out a federal claim.

Here the state procedural rule at issue cannot form the basis of a federal habeas claim.  Federal courts within Pennsylvania have held Pennsylvania Rule of Criminal Procedure 600 is not cognizable in a habeas petition. *See*, *e.g.*, *Kim v. Klem*, No. Civ. A. 03-1628, 2003 WL 22204549, at *5 (E.D. Pa. July 31, 2003).  The Third Circuit Court of Appeals considered Pennsylvania's speedy trial rule in the context of Sixth Amendment speedy trial rights and held Pennsylvania's rule "does not define the contours of the federal constitutional right to a speedy trial."[5]  *Wells v. Petsock*, 941

_____

[5]  At the time Wells was decided, Pennsylvania's speedy trial rule was Rule 1100.  On April 1, 2001, Pennsylvania's speedy trial rule was re-codified as Rule 600.  *Kim*, 2003 WL 22204549, at *5 n.1.

34

F.2d 253, 256 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992).
Because Pennsylvania's speedy trial rule is not coextensive with
the constitutional right to a speedy trial, a claimed violation of
the rule does not state a claim under the United States
Constitution entitling a petitioner to federal habeas relief.
*Blackwell v. Larkins*, No. Civ. A. 97-CV-1999, 1998 WL 401752, at *5
(E.D. Pa. July 6, 1998); *Cooper v. Vaughn*, No. Civ. A. 90-0652,
1993 WL 264699, at *3 (E.D. Pa. July 2, 1993).

Further, to the extent Petitioner bases his federal claim on
*Crawford*, we need not engage in an extensive discussion of the
merits of any *Crawford*-related claim because, as discussed in the
context of prejudice resulting from procedural default, Petitioner
has not shown how any *Crawford*-related error would not be harmless.
This is important because, even if we were to assume *arguendo* that
a constitutional error occurred, habeas relief is not warranted if
the error was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 638
(1993).

We conclude that any error associated with testimony
Petitioner asserts should have been disallowed under *Crawford* would
be harmless because, if Sergeant Garver's assertedly improper
testimony were not allowed, at most Petitioner may have convinced
the trial court deciding the Rule 600 motion that the time
attributable to him should not have included the time associated

35

with extradition waiver matters.  As discussed above, this is at most a matter of thirty-nine days - an amount of time insufficient to cause a different outcome at the Rule 600 hearing.  Thus, Petitioner's claim is without merit.

### 3.   *Photo Array Disclosure*

In Ground Three, Petitioner asserts he is entitled to habeas relief because the prosecution did not disclose evidence favorable to the defense in that it did not make pretrial disclosure concerning the first photo array.  (Doc. 1 at 8.)  Petitioner now refers to this issue as a "*Brady* claim."  (*See* Doc. 30 at 15.) With this claim, Petitioner specifically states the defense was not made aware that there were two distinct photo arrays and knew nothing about (nor was he selected from) the first array.  (Doc. 21-1 at 18.)  Petitioner objects to the Magistrate Judge's conclusion that this claim is procedurally defaulted and substantively without merit.  (Doc. 30 at 15-19.)  We agree with the Magistrate Judge's determination and conclude Petitioner's Second Ground does not provide a basis for habeas relief.

A federal due process claim based on the prosecution's withholding of or failure to produce evidence is known as a "*Brady* claim" originating in the United States Supreme Court holding in *Brady v. Maryland*, 373 U.S. 83 (1963).  *Brady* held "the suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. We will further discuss the elements of a *Brady* claim below in our discussion of the merits of Petitioner's claim.

With the general legal framework of a *Brady* claim as the backdrop of our discussion, we will now review Petitioner's objections to the Magistrate Judge's findings regarding his *Brady* claim.

### a. *Procedural Default of Photo Array Claim*

Petitioner presents a multitude of arguments in opposition to the Magistrate Judge's conclusion he procedurally defaulted his photo array claim. We conclude they are all without merit.

Petitioner first argues he did not procedurally default his claim in state court because the Superior Court of Pennsylvania addressed the merits of this claim. (Doc. 30 at 16.) This assertion is without merit because the Superior Court reached the merits of the claim as an alternate holding. If the last state court to be presented with the claim reached the merits as an alternative holding to its decision that the claim was procedurally barred, the habeas court proceeds with the procedural default analysis. *Johnson*, 392 F.3d at 558. Here the record shows the Pennsylvania Superior Court considered the merits as an alternative

37

to its conclusion the claim was barred based on state procedural
rules.  (Doc. 17-9 Ex T at 6-9.)  Therefore, Petitioner cannot
avoid application of the procedural default doctrine on this basis.

Alternatively, Petitioner asserts four bases upon which the
Court should excuse procedural default of this claim: 1) the
factual and legal basis of the claim was presented to the state
courts; 2) the state court decision appeared to rest primarily on
federal law or be interwoven with federal law; 3) counsel was
ineffective for failing to preserve the *Brady* claim and this
constitutes cause and prejudice to excuse the default; and 4) the
writ should be granted based on his claim of actual innocence.
(Doc. 30 at 16.)  Technically, only the last two of these arguments
potentially excuse procedural default; the first two are arguments
against finding Petitioner procedurally defaulted his claim.

Petitioner's assertions which amount to arguments against a
finding he procedurally defaulted his *Brady* claim are without
merit.  First, Petitioner argues his *Brady* claim was a new issue
presented in his PCRA Petition and the factual and legal basis of
the claim was presented to the state courts in a manner that put
them on notice that a federal claim was being presented.  (Doc. 30
at 15.)  This argument does not avoid procedural default of the
claim: even if a petitioner has fairly presented his claim in state
court, when the reviewing state court decides the claim based on an

38

adequate and independent state procedural rule, the procedural default doctrine applies.  *Coleman*, 501 U.S. at 750, *Johnson*, 392 F.3d at 556, *Sistrunk*, 96 F.3d at 673.

Here the Pennsylvania Superior Court first concluded the issue of the reliability of the identification had been litigated on direct review and, despite Petitioner's presentation of a different theory of why the identification made by the victim was not reliable, the issue had been previously litigated.  (Doc. 17-9 Ex. T at 6-7.)  Thus, the state reviewing court first decided the issue based on a state procedural rule, rendering the procedural default doctrine operative.[6]

Petitioner's second basis to avoid procedural default is similarly without merit.  His claim that the state court decision appeared to rest primarily on federal law or be interwoven with federal law (Doc. 30 at 16) is simply not supported by the decision rendered by the Pennsylvania Superior Court on his PCRA appeal (Doc. 17-9 Ex. T at 6-7).  In that opinion, the procedural bases

---

[6]  As previously discussed in the context of Petitioner's Rule 600 claim, Pennsylvania's rules prohibiting consideration of the merits of previously litigated claims have been considered a proper basis for procedural default.  *See*, *e.g.*, *Wenger*, 266 F.3d at 227. Petitioner makes no argument that these rules are not an "adequate and independent" state law ground for denying review.  Therefore, as concluded in the text, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice in order to overcome the default.

relied upon to deny relief clearly rested on state procedural law grounds - the prohibition against considering previously litigated claims in PCRA petitions and the evidence required to be presented in conjunction with PCRA claims.  (*Id.*)  No federal law was relied upon or interwoven with state procedural law in the Superior Court's decision the claim was procedurally barred.  To the extent the Superior Court discussed the merits of Petitioner's photo array claim, its decision the claim lacked merit was an alternative holding to its decision the claim was procedurally barred. Although the Superior Court's alternative analysis of the merits of the photo array claim may have been consistent with *Brady* (Doc. 17-9 Ex. T at 6-9), the consistency is of no legal consequence because it took place in an alternative holding which does not undermine application of the procedural default doctrine.  *Johnson*, 392 F.3d at 558.  Because Petitioner did not provide any specifics or detail his assertion regarding the source of law relied upon, no further discussion of this issue is warranted.

With Petitioner's third argument made in conjunction with his ineffective assistance of counsel claim (which we will discuss below), he asserts that counsel's failure to preserve his *Brady* claim constitutes cause and prejudice for the default.  (Doc. 30 at 16.)  Although constitutionally ineffective assistance of counsel may provide cause for a default, it is the petitioner's burden to

show cause and actual prejudice.  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted).  As will be discussed below with regard to the merits of the claim and assistance of counsel, here Petitioner has made no such showing and any claimed counsel error cannot provide a basis for overcoming procedural default.

Similarly, Petitioner's last asserted basis to overcome procedural default - his assertion of actual innocence (Doc. 30 at 16) - is unavailing.  The "miscarriage of justice" basis of overcoming procedural default is only applicable in extraordinary cases where the petitioner "prove[s] that it is more likely than not that no reasonable juror would have convicted him."  *Werts*, 228 at 193 (*citing Schlup v. Delo*, 513 U.S. 298, 326 (1995)). Petitioner has not even attempted to meet this standard and cannot use claimed innocence as a basis to excuse procedural default.

Based on this review of Petitioner's objections to the Magistrate Judge's finding that he has procedurally defaulted his *Brady* claim, we conclude the objections are without merit and Petitioner has procedurally defaulted this claim.

### b.   *Merits of Photo Array Claim*

Because the Magistrate Judge and Pennsylvania Superior Court alternatively addressed the merits of Petitioner's *Brady* claim regarding the photo array (Doc. 24 at 17-20; Doc. 17-9 Ex. T at 8-9), we too will do so.

As set out above, in *Brady v. Maryland*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court identified the three elements of a *Brady* claim in *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). First, "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Id.* Second, "the evidence must have been suppressed by the State, either willfully or inadvertently." *Id.* Third, "prejudice must have ensued." *Id.* Every failure to disclose favorable evidence does not rise to the level of a constitutional violation. *See Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). The failure to disclose constitutes a due process violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434. The failure to disclose evidence is not a *Brady* violation "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

The Third Circuit Court of Appeals recently considered a *Brady* claim, stating the petitioner needed to show the suppressed evidence was "material and favorable." *Albrecht v. Horn*, 485 F.3d

42

103, 131 (3d Cir. 2007).  Citing the "reasonable probability"
standard, the court stated "[t]he question is not whether the
defendant would more likely than not have received a different
verdict with the evidence, but whether in its absence he received a
fair trial, understood as a trial resulting in a verdict worthy of
confidence."  *Albrecht*, 485 F.3d at 131 (*citing Kyles*, 514 U.S. at
434).

To the extent the Superior Court addressed the merits of this
claim at the PCRA appeal level, it did so without reference to the
relevant Supreme Court precedent, *Brady v. Maryland* (and its
progeny), or any other federal law.  (*See* Doc. 17-9 Ex. T at 8-9.)
However, the question is not whether the state court cited the
relevant Supreme Court precedent, but whether "the reasoning or the
result of the state court decision contradicts" Supreme Court
precedent.  *Early*, 537 U.S. at 8.  Reviewed in this context, we
conclude the Superior Court's adjudication of the claim did not
result in a decision that was contrary to or an unreasonable
application of federal law, nor was it based on an unreasonable
factual determination in light of the evidence presented.  (*See*
Doc. 17-9 Ex. T at 8-9.)  This conclusion precludes habeas relief
pursuant to 28 U.S.C. § 2254(d).  The Superior Court concluded
"[t]here would have been no impeachment value to the first array
unless Appellant was one of the people pictured therein.  However,

43

he did not even allege that his photo was in the initial array. The most he did was to claim that his picture was somewhere in the police database at the time the victim saw the first group of photos." (*Id.* at 8.)  The Superior Court also independently reviewed the record and found Petitioner was not entitled to PCRA relief on the issue.  (*Id.*)  Finding no basis upon which to conclude the Superior Court's adjudication of the claim was improper under the standards set out in 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas relief on this claim.[7]

Even if we were to assume *arguendo* the AEDPA's deferential standard does not apply, Petitioner's extensive argument in support of his objection to the Magistrate Judge's determination that his *Brady* claim is without merit (Doc. 30 at 17-19) does not set out

---

[7]  Petitioner's assertion that, contrary to the Superior Court's finding, he submitted a witness certification under 42 Pa. C.S.A. § 9545(d)(1) "setting forth the expected testimony of witnesses to support his claim" (Doc. 30 at 17) does not alter our conclusion.  As Petitioner's challenge on this point is a challenge of a state court's individual fact determination, the review of the issue is conducted pursuant to 28 U.S.C. § 2254(e)(1).  Therefore, the state court's factual finding is presumed correct and Petitioner has the burden of rebutting the presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Here the Exhibit upon which Plaintiff relies does not set out the expected witness testimony. (Doc. 30 at 17 (citing Doc. 21 Exhibits).)  This is not the required clear and convincing evidence.  Thus, the Superior Court's determination that Petitioner "proposed no witnesses who would testify to the composition of the first array . . . [and] he filed no certifications under 42 Pa. C.S.A. § 9545(d)(1) on this essential point" (Doc. 17-9 Ex. T at 8-9) is entitled to the presumption of correctness.

the required elements of a *Brady* claim and does not establish a basis for habeas relief.  Importantly, even if Petitioner were able to show suppression, Petitioner does not make the required showing that the evidence was material and favorable.  *Albrecht*, 485 F.3d at 131.  Nor does Petitioner show how the asserted failure to disclose "undermines confidence in the outcome of the trial" – a required showing to establish a due process violation.  *Kyles*, 514 U.S. at 436-37.

Petitioner cites various transcript pages to support his assertion the Court can reasonably conclude there was "a prior photo session and that Knights [sic] picture were [sic] among those previously viewed but not identified."  (Doc. 30 at 22.) Petitioner does not include the cited pages of the transcript as exhibits.  However, upon our independent review of the record, we have found the two pages Petitioner refers to as the testimony of the "officer in charge" (Doc. 30 at 22) which he asserts supports his claim.  (*See* Doc. 7 Ex. C, N.T. 157-158.)  The testimony of the officer in charge indicates that a photo array took place before Petitioner was a suspect in the case, and when asked whether the witness was shown Petitioner's picture in that array, the officer responded "I don't recall that he was."  (Doc. 7 Ex. C, N.T. 158.)

Petitioner cannot satisfy his burden with this scant evidence which cannot be deemed favorable to his position.  He has provided

45

no basis upon which we can conclude the alleged nondisclosure "was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict," *Strickler*, 527 U.S. at 281, or that the absence of the evidence resulted in a verdict unworthy of credence, *Albrecht*, 485 F.3d at 131.  With this determination, any nondisclosure does not rise to the level of a constitutional violation and cannot provide a basis for habeas relief.

**4.    *Jury Charge Claim***

With Ground Four, Petitioner claims he was denied the right to a fair and impartial trial under the Fifth, Sixth and Fourteenth Amendments when the trial judge improperly interjected his own opinion into the jury charge.[8] (Doc. 1 at 9; Doc. 21-2 at 25.) Specifically, Petitioner cites portions of the jury charge which he maintains established that the trial judge believed Petitioner was the person at the scene and the elements of the robbery charge were not in dispute.  (Doc. 21-2 at 25.)  Petitioner objects to the Magistrate Judge's conclusion that this claim is procedurally

---

[8]    Petitioner now adds that the charge was improper because it removed from the jury's consideration essential elements of Pa. C.S.A. § 3701 (robbery) that he was the person who committed the crime and that the elements aren't really in dispute.  (Doc. 31 at 4.)  Petitioner does not make any argument why he did not raise this factual basis for his claim in state court and does not attempt to satisfy the requirements for consideration found in 28 U.S.C. § 2254(e)(2).  Therefore, this aspect of Petitioner's claim requires no further discussion.

46

defaulted.[9]  (Doc. 31 at 2.)  We agree with the Magistrate Judge's determination and conclude Petitioner's Fourth Ground does not provide a basis for habeas relief.

### a.    *Procedural Default of Jury Charge Claim*

Petitioner does not argue that he did not waive this claim, as found by the Pennsylvania Superior Court.  (Doc. 31 at 2.) However, he maintains that ineffective assistance of counsel provides cause for the procedural default resulting from the waiver.  (*Id.*)  As will be discussed below in the Ineffective Assistance of Counsel section of this Memorandum, Petitioner has not established that counsel provided ineffective assistance on this issue.  Because Petitioner has not shown counsel was ineffective regarding the jury charge, he has not shown cause for his default.  Therefore, Petitioner has not met his burden of providing a basis upon which procedural default can be excused.

### b.    *Merits of Jury Charge Claim*

On Petitioner's appeal of the denial of his PCRA petition, the Pennsylvania Superior Court addressed the merits of Petitioner's jury charge claim in the context of his ineffective assistance of counsel claim, concluding the underlying claim was without merit.

---

[9]  Petitioner states the Magistrate Judge "remain[ed] silent" as to the merits of his Ground Four claim.  (Doc. 31 at 2.) However, the Magistrate Judge considered the merits of the claim and concluded it had no merit.  (Doc. 24 at 21 n.9, 26-29.)

47

(Doc. 17-9 Ex. T at 10.)

Habeas relief for a defective jury instruction is only available when the defective instruction infects the entire trial with unfairness. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Albrecht*, 485 F.3d at 129 (*citing Cupp*, 414 U.S. at 147).  Further, it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyd v. United States*, 271 U.S. 104, 107 (1926); *see also Boyde v. California*, 494 U.S. 370, 378 (1990) (*citing Boyd*, 271 U.S. at 107).

Here the Superior Court did not discuss the issue in terms of federal law.  Rather, the Superior Court reviewed the jury instruction issue with reference to state law requiring a reviewing court to "consider all the instructions as a whole and determine whether they clearly, adequately and accurately reflect the law." (Doc. 17-9 Ex. T at 10 (*citing Commonwealth v. Jones*, 858 A.2d 1198, 1201 (Pa. Super. 2004).)

Because we find nothing in the law applied by the Superior Court to be inconsistent with federal law on the issue, we will apply the deferential AEDPA standard of § 2254(d).

The Superior Court first reviewed the following portion of the jury charge about which Petitioner complained: " . . . I am convinced by the testimony of Ms. Cotton and the other evidence and

48

the other factors that they have established that he was there."
(Doc. 17-9, Ex. T at 11.)   The Superior Court determined the above-quoted language was not suggestive when considered in context:

> Now, you've got to decide. I am convinced by
> the testimony of Ms. Cotton and the other
> evidence and the other factors that they have
> established that he was there.  Or you can
> look at his testimony, you can look at her
> testimony and combine those two and say,
> well, some of the things I agree on. But
> you've got to make a judgment ultimately
> about the identification.

(*Id.*)   In concluding the underlying claim to be without merit, the Superior Court explained that although one portion of the instruction cited by Petitioner made it seem the trial court was expressing its own opinion that Petitioner was present for the crime, reviewing the quoted portion in context revealed the court was presenting the jury with options it could consider.   (Doc. 17-9 Ex. T at 11.)

Petitioner also complained about the following portion of the charge:

> Also, you can consider what interest they
> have in the outcome of the case.  Does Ms.
> Cotton have any motive to falsely accuse
> someone or make a false identification?  Does
> she have some reason or some benefit inure to
> her to make a false accusation or false
> identification, or is she simply mistaken
> about that identification?  So those are
> things for you to consider.

(*Id.* at 10.)   The Superior Court determined this portion of the

charge properly advised the jury to consider the witness's credibility. (*Id.* at 11.)  Upon review of the charge as a whole, the Superior Court concluded "the court properly stated the law without interjecting its personal opinions concerning the evidence." (*Id.* at 10-11.)

Insofar as the Superior Court's determination can be considered a determination on the merits, habeas relief cannot be granted because our review of the record reveals the adjudication of the claim did not result in a decision that was contrary to or an unreasonable application of federal law, nor is it an unreasonable determination of the facts in light of the evidence before the state court.  28 U.S.C. § 2254(d).  Our review of the charge supports the reasonableness of the Superior Court's assessment that the trial judge presented the jury with alternative theories it could believe and properly charged on the issue of credibility. (Doc. 17-3 Ex. A, N.T. 189.)

The reasonableness of the Superior Court's adjudication of the merits of the identification related claim is reinforced by the trial judge's emphasis on the matter of identification: after presenting the alternatives quoted above and stating identification was ultimately for the jury to decide, the judge further stated "I feel like I'm going over that and over that, but that is the issue for you in the case." (*Id.*)  Also, in summing up his instruction

on the robbery charge, the trial judge reiterated the importance of identification: "The defense through their testimony has said we weren't in the store.  We weren't there.  Therefore, we couldn't have done any of this.  But that's for you to consider when you evaluate all the testimony in this case." (*Id.*, N.T. 195.)

**5.  *Ineffective Assistance of Counsel Claims***

In Ground Five, Petitioner seeks habeas relief based on the claimed denial of effective assistance of counsel.  (Doc. 1 at 15.) In his Petition, he states his trial/appellate counsel was not effective regarding the IAD, Rule 600 and photo array issues. (*Id.*)  In "Petitioner's Reply Brief for Writ of Habeas Corpus to the District Court Middle District of Pennsylvania" (Doc. 21-2), Petitioner does not raise ineffective assistance of counsel regarding his IAD claim, but adds an ineffective assistance claim not raised in his petition regarding the trial court's jury charge (*id.* at 25).  In his objections to the Magistrate Judge's Report and Recommendation, Petitioner clarifies that he has not raised an ineffective assistance of counsel claim regarding the IAD issue. (Doc. 30 at 9.)  Therefore, we will consider Petitioner's ineffective assistance claims relating to his Rule 600, photo array and jury instruction claims.  These claims were presented to the Pennsylvania courts in Petitioner's PCRA petition (Doc. 17-6 Ex. G at 11-12) and reviewed on the merits by the last court to consider

51

the claims, the Pennsylvania Superior Court (Doc. 17-9 Ex. T).

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht*, 485 F.3d at 127 (*citing Strickland*, 466 U.S. at 689-92). To show prejudice, a petitioner must show "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Albrecht*, 485 F.3d at 127 (*quoting Strickland*, 466 U.S. at 694).

The ineffective assistance of counsel standard in Pennsylvania is consistent with *Strickland*. *Taylor*, 2007 WL 2728668, n.28; *Werts*, 228 F.3d at 203; *Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987). Although the Pennsylvania Superior Court in this case relied on *Commonwealth v. Williams*, 899 A.2d 1060, 1063 (Pa. 2006), a case which had not been decided when *Werts* determined the consistency of the Pennsylvania and *Strickland* standards, the standard set out in *Williams* is essentially the same as that set out in *Commonwealth v. Pierce*, 515 Pa. 153 (Pa. 1987), the case

*Werts* primarily used in its *Strickland* comparison, *see* 228 F.3d at
203.

Because the Pennsylvania standard employed by the Superior
Court is consistent with the *Strickland* standard, we review the
state court decision with the deference required by 28 U.S.C. §
2254(d).

### a.   *Rule 600 Hearing*

Petitioner does not argue, and we do not find, the
Pennsylvania Superior Court's decision on assistance of counsel
regarding Petitioner's Rule 600 claim to be contrary to, or an
unreasonable application of the principles of *Strickland*.  *See* 28
U.S.C. § 2254(d)(1).  Among other findings, the Superior Court
determined Petitioner had not shown his claim had arguable merit.
(Doc. 17-9 Ex. T at 5.)  The Superior Court also concluded
Petitioner had not presented sufficient evidence to make a
determination regarding the reasonableness of counsel's decision
not to raise the Rule 600 issue on appeal. (*Id.* at 5-6.)  These
conclusions are consistent with *Strickland* which places the burden
of production and persuasion on the party raising claims of
ineffective assistance.  *Strickland*, 466 U.S. at 687, 696.

Similarly, Petitioner has not produced evidence indicating
that the Superior Court's adjudication of the claim "resulted in a
decision that was based on an unreasonable determination of the

53

facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2),
or that the Superior Courts's determination of a factual issue does
not deserve the presumption of correctness required by §
2254(e)(1).  Although Petitioner argues the facts indicate the
outcome of the Rule 600 hearing would have been different had
counsel been effective because there was no evidence he waived
extradition (Doc. 30 at 15), our discussion of the merits of this
issue belies his claim: the 365-day rule would not have been
violated because only a small portion of the time spent in Alabama
which was attributed to him rather than the Commonwealth could
potentially be transferred to the Commonwealth if a court
determined that Petitioner had, in fact, waived extradition.  *See*
*supra* pp. 29-32.  Therefore, any argument the Superior Court did
not properly consider the facts of the effective assistance of
counsel claim which relies on the extradition waiver issue to
support the asserted reasonable probability of a different outcome
of the Rule 600 hearing is without merit.

    **b.   *Photo Array Claim***

On the issue of ineffective assistance based on trial
counsel's conduct related to the photo array the Superior Court
simply concluded Petitioner had not produced evidence the claim had
arguable merit and, therefore, it would not deem counsel
ineffective for failing to pursue the matter.  (Doc. 17-9 Ex. T at

9.)  This reasoning and adjudication of the claim are consistent with *Strickland's* requirement that the Petitioner show "counsel's deficient performance prejudiced his client."  *Albrecht*, 485 F.3d at 127 (*citing Strickland*, 466 U.S. at 689-92).  Without evidence that the underlying claim had arguable merit, Petitioner could not make the required showing of prejudice.  Because we have previously found the Superior Court's analysis of the underlying claim appropriate, and because the Superior Court's reasoning on the related effective assistance of counsel claim does not violate the standards set out in § 2254(d), this claim cannot form a basis for habeas relief.

### c.  Jury Charge Claim

Similarly, the Pennsylvania Superior Court concluded that because the underlying jury charge issue was without merit, Petitioner could not succeed on his related ineffective assistance of counsel claim.  For the same reasons discussed regarding the photo array claim, this claim cannot form a basis for habeas relief.

### III. Conclusion

For the reasons discussed above, Petitioner has presented no basis upon which habeas relief can be granted.  Therefore, his Petition is dismissed.  An appropriate Order follows.

                        S/Richard P. Conaboy
                        RICHARD P. CONABOY

United States District Judge

DATED: November 9, 2007

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDRE C. KNIGHT,                    :
                                    :
          Petitioner,               :CIVIL ACTION NO. 3:06-CV-1942
                                    :
          v.                        :(JUDGE CONABOY)
                                    :(Magistrate Judge Blewitt)
DONALD L. KELCHNER, et al.,         :
                                    :
          Respondents.              :
                                    :

---

**ORDER**

AND NOW, THIS 9th DAY OF NOVEMBER 2007, FOR THE REASONS SET
OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.   Magistrate Judge Blewitt's Report and Recommendation
     (Doc. 24) is ADOPTED as modified;

2.   Petitioner's 28 U.S.C. § 2254 action is dismissed;

3.   There is no basis for the issuance of a certificate of
     appealability;

4.   The Clerk of Court is directed to close this case.

56

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge